EL PUEBLO DE PUERTO RICO, peticionario, *v.* FRANCISCO J. JORDÁN TARRAZA, acusado y recurrido.

*Número:* CE-86-551       *Resuelto:* 24 de marzo de 1987

*Rafael Ortiz Carrión, Procurador General, Rose Mary Corchado Lorent, Procuradora General Auxiliar,* abogados del peticionario; *Raúl Aponte Sánchez,* abogado del recurrido.

El Juez Asociado Señor Negrón García emitió la opinión del Tribunal.

Trazamos en este recurso los linderos jurídicos y el valor probatorio ante los tribunales del país de los certificados de matrimonio oficiales expedidos por el Registro Demográfico.

I

Ante el Tribunal Superior, Sala de Bayamón, el Ministerio Público formuló acusación por bigamia contra Francisco J. Jordán Tarraza, imputándole que el 31 de agosto de 1985, contrajo nupcias con Jael Campos Valedón sin que anteriormente se hubiera anulado o disuelto legítimamente su matrimonio con Carmen N. Collazo Jordán. Éste hizo alegación de no culpable y renunció al jurado.

En la vista en su fondo, el Ministerio Fiscal presentó los testimonios de la señora Collazo Jordán y del Lic. Miguel Febres Ramírez.

La señora Collazo declaró que estaba casada con Jordán Tarraza desde el 31 de octubre de 1981, y que a la fecha del juicio —28 de junio de 1986— así continuaba. El 2 de agosto de 1985, por desavenencias conyugales, presentó demanda de divorcio por trato cruel. Posteriormente se reunieron y ambos acordaron enmendar la causal por consentimiento mutuo. Después, su abogado Fabres Ramírez renunció por razón de un posible conflicto de intereses. Días antes de celebrarse la vista del divorcio recibió una invitación para la boda del acusado con Jael Campos.

El licenciado Fabres Ramírez atestó que la señora Collazo contrató sus servicios para un trámite de divorcio por trato cruel. Subsiguientemente se cambió la causal a consentimiento mutuo. Él representaba a ambos cónyuges. Pocos días antes de la vista de divorcio, la señora Collazo lo llamó informándole que había recibido una invitación para la boda del acusado Jordán Tarraza. Optó por llamarlo por teléfono y le dijo que no se podía casar. Le explicó que cometería el delito de bigamia. Le leyó la disposición legal del Código Penal sobre el particular. Posteriormente confirmó que se había celebrado la boda por lo que renunció a la representación legal de ambos.

Además, a solicitud del fiscal se admitieron en evidencia los dos certificados de matrimonio expedidos por el Registro Demográfico correspondientes al acusado Jordán Tarraza, y varios documentos del caso de divorcio Civil RF-85-2944, *Carmen L. Collazo Jordán* v. *Francisco J. Jordán Tarraza.*[1] Con esta prueba el Pueblo sometió el caso.

Jordán Tarraza solicitó la absolución perentoria. Argumentó que los certificados de matrimonio no eran suficientes para probar el caso. A su juicio, era indispensable que una de las personas, la contrayente Jael Campos Valedón o el juez,

---

[1] Tenemos el beneficio del examen de dichos autos originales. El mismo culminó con una sentencia de archivo emitida el 6 de septiembre de 1985.

que estuvieron en la segunda boda declararan a tales efectos. Con la oposición del Ministerio Público, el 29 de mayo de 1986, el tribunal lo absolvió perentoriamente.

No conforme, el Estado presentó *certiorari*. Acordamos examinar si los certificados de matrimonio presentados en evidencia eran prueba suficiente para dejar establecido en esa etapa el delito de bigamia.

## II

El ilustrado foro de instancia cometió el error de derecho. Los certificados de matrimonio —en unión a la prueba testifical no contradicha— eran suficientes para probar la celebración de ambos enlaces.

■ El planteamiento de Jordán Tarraza de que era imprescindible presentar a la contrayente Jael Campos Valedón o el juez ante quien se realizó el segundo matrimonio es patentemente frívolo. En *Pueblo* v. *Ramírez*, 65 D.P.R. 680, 681–682 (1946), rechazamos enfáticamente esa contención, justamente en un caso de bigamia. Allí resolvimos que el matrimonio se prueba por copia certificada del acta de matrimonio del Registro, que por disposición estatutaria constituye evidencia prima facie del matrimonio. Veamos.

■ El Art. 24 de la Ley del Registro Demográfico —Ley Núm. 24 del 22 de abril de 1931— en interacción con su Art. 38, (²) según enmendado, tajantemente disponen que

---

(²) Disponen respectivamente:

*"Toda persona autorizada por la ley, ante la que se hubiere celebrado el matrimonio,* estará obligada a entregar dentro de los diez días siguientes a la celebración del mismo, al encargado del registro del distrito en que tuvo lugar dicha ceremonia, *la licencia matrimonial y la declaración jurada que hubiesen presentado los contrayentes de acuerdo con las disposiciones de la ley, junto con la certificación de la celebración del matrimonio,* que expresará *la fecha y lugar en que se hubiera celebrado* el mismo y contendrá las firmas del celebrante y contrayentes y de los testigos presenciales del acto." (Énfasis nuestro.) 24 L.P.R.A. sec. 1163.

las copias certificadas de las actas de matrimonio en el Registro Demográfico son prueba del matrimonio, y además constituirán "evidencia prima facie ante todas las cortes de justicia de los hechos que consten en la misma". Su examen revela: (1) el estatuto no distingue entre casos civiles y criminales; (2) contempla la admisibilidad del certificado, como excepción a la regla general de exclusión de prueba de referencia, y (3) por efectos de la expresión "prima facie" no sólo crea una presunción de que se celebró el matrimonio, sino de los demás hechos que constan en dicho certificado. Como tal, basta para probar como hecho determinado —mientras no se contradiga o desvirtúe con otra evidencia— el evento nupcial. *González* v. *Sucn. Díaz*, 69 D.P.R. 643, 650 (1949). "Lo mejor es considerar *siempre* 'evidencia prima facie' como presunción salvo que del contexto otra cosa surgiera." E. L. Chiesa, *Práctica Procesal Puertorriqueña*, San Juan, Pubs. J.T.S., 1985, Evidencia—Vol. I, pág. 42.

Con relación a las Reglas de Evidencia de 1979, notamos que la Regla 61 dispone, como norma general, que no será admisible prueba de referencia, "[s]*alvo que por ley se disponga otra cosa*". 32 L.P.R.A. Ap. IV, R. 61. Según hemos visto, aquí la Ley Núm. 24 del Registro Demográfico autoriza la admisibilidad del certificado por mandato expreso del Legislador. Ello se justifica en atención a los diversos trámites que estatutaria y reglamentariamente tienen que cumplir los interesados y el celebrante —antes, durante y después— de la celebración de un matrimonio, a saber: análisis de sangre y examen mé-

---

"A petición de parte interesada, . . . el Secretario de Salud o la persona autorizada por él, suministrará copia certificada de cualquier certificado de nacimiento, casamiento o defunción que se haya inscrito o registrado en el Registro General . . . . *La copia del récord* de cualquier nacimiento, *casamiento* o defunción, *después que sea certificada* por el Secretario de Salud o por la persona autorizada por él, *constituirá evidencia prima facie ante todas las cortes de justicia de los hechos que consten en la misma.*" (Énfasis nuestro.) 24 L.P.R.A. sec. 1237.

dico de la pareja para obtener la "Licencia Matrimonial" previa; suministrar la información personal y de sus progenitores solicitada en el formulario impreso del "Certificado"; comparecencia ante la persona autorizada para celebrarlo (juez, sacerdote, ministro o rabino); realización de la ceremonia con la presencia de dos (2) testigos ante quienes los contrayentes declaran su propósito de unirse; suscripción y firma documental por los contrayentes, testigos y el celebrante, y remisión e inscripción del certificado en el Registro Demográfico, por cuya omisión el celebrante puede cometer un delito menos grave. Obviamente, estos requisitos rodean el acto de suficiente garantía circunstancial de veracidad, y confieren racionalmente al certificado, como documento, presuntiva legitimidad.

■ Más aún, bajo la Regla 65 de Evidencia, la admisibilidad de tales certificados de matrimonio —como excepción a la Regla 61— es más amplia al examinarse bajo la óptica de "récords oficiales" (Regla 65(H)); "récord de estadística vital" (Regla 65(I)), o en sí, como "certificado de matrimonio" (Regla 65(L)). Sobre su admisibilidad, consúltense: V *Wigmore, Evidence* Sec. 1644 (Chadbourn rev. 1974); *McCormick, Handbook of the Law of Evidence* Cap. 32, Secs. 317 y 319 (2da ed. 1972); 4 *Louisell & Mueller, Federal Evidence* Sec. 457 (1980), y 4 *Weinsten on Evidence* Sec. 803(9)[1] (1985).

■ Finalmente, es menester aclarar que nada hay en nuestro ordenamiento probatorio —en o fuera del cuerpo de Reglas de Evidencia— que exija determinada forma para establecer el hecho de la celebración de un matrimonio o para corroborar lo que surge de su certificado. Después de todo, en nuestra jurisdicción el único criterio válido de suficiencia de prueba para establecer un hecho —conforme lo pautado en la Regla 10(C)— no "exige aquel [grado] de prueba que, excluyendo posibilidad de error, produzca absoluta certeza; sólo

se exige la certeza o convicción moral en un ánimo no prevenido". 32 L.P.R.A. Ap. IV, R. 10 (C).

■ El criterio de "certeza moral" queda plenamente satisfecho con el certificado de matrimonio en virtud de los requisitos que la ley exige para expedir una licencia, su celebración y eventual inscripción. En cierto sentido, sin el certificado oficial, la sola prueba testifical por quien presenció u ofició el acto de celebración es más débil y dudosa. Difícilmente, salvo un testigo con memoria prodigiosa —capaz de retener y reproducir sin error en el tribunal toda la información requerida en el certificado— podría demostrarse cabal e íntegramente que fueron satisfechos todos los requisitos de ley para la validez del enlace. Sin dicho certificado, básicamente tendríamos información fragmentada y solamente una conclusión al efecto.

■ Ciertamente, el certificado constituye mejor prueba para satisfacer la consciencia y ánimo del juzgador de que se observaron todos los requisitos legales para su validez. No procedía en derecho la absolución perentoria.

En virtud de lo expuesto, *se dictará sentencia y revocará la resolución del Tribunal Superior, Sala de San Juan. Continuarán allá los trámites posteriores compatibles con lo resuelto.*

El Juez Asociado Señor Rebollo López concurre en el resultado sin opinión escrita. El Juez Presidente Señor Pons Núñez no intervino.