AD-2001-1                                              1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Ricardo J. González Porrata Doria<br>Juez del Tribunal de Primera<br>Instancia<br>Sala de Guayama | 2002 TSPR 129<br><br>157 DPR |

Número del Caso: AD-2001-1


Fecha: 24/septiembre/2002


Oficina de Administración de los Tribunales:

Lcda. Ivonne Díaz Pérez
Directora
Lcda. Nilsa L. García Cabrera
Oficina de Asuntos Legales


Abogado de la Parte Querellada:

Lcdo. Héctor M. Varela Riestra

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Ricardo J. González Porrata
Doria - Juez del Tribunal
de Primera Instancia
Sala de Guayama

                              AD-2001-1   Conducta
                                           Profesional

PER CURIAM

San Juan, Puerto Rico, a 24 de septiembre de 2002

No existe controversia sobre los hechos de este caso. Las partes sometieron un Informe de Conferencia Conjunto a la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones, en adelante la Comisión, en el cual estipularon los mismos.  A su vez, mediante otro escrito, renunciaron a la vista evidenciaria.

El Honorable Ricardo J. González Porrata-Doria fue juramentado como Juez Municipal del Tribunal de Primera Instancia el 2 de enero de 1996. Posteriormente, el 19 de junio de 2000, recibió

nombramiento de Juez Superior del Tribunal de Primera Instancia.

Al momento de los hechos que originaron esta querella, el Juez querellado estaba asignado a la Sala del Tribunal de Primera Instancia, Región Judicial de Guayama.

El Sr. Edward S. Mitchell contrató los servicios del Juez González Porrata-Doria para celebrar su matrimonio con la Sr. Leslie Renee Wallace. Se estipularon los honorarios a ser percibidos por el juez en la suma de ciento cincuenta (150) dólares.

El rito matrimonial se celebró en San Juan, el 9 de julio de 1999. Celebrado el acto, el juez indicó a los contrayentes que en cinco (5) días podían recoger en el Registro Demográfico de San Juan, en adelante el Registro, el Certificado de Matrimonio.

Así las cosas, en algún momento a finales del mes de julio, o principios del mes de agosto de 1999, el esposo acudió a las oficinas del Registro a recoger el Certificado de Matrimonio. Allí le indicaron que los documentos de inscripción para dicho matrimonio no habían sido presentados ni entregados.

Ante tal situación, el Sr. Mitchell se comunicó con el Juez querellado y le inquirió sobre la presentación de los documentos de inscripción del matrimonio ante el Registro. El juez respondió que los documentos habían sido devueltos por un error de su secretaria. El Juez querellado expidió una certificación dando fe de la celebración del matrimonio Mitchell-Wallace, con fecha de 1 de agosto de 1999.

En el transcurso de las siguientes tres (3) semanas, el Sr. Mitchell visitó nuevamente el Registro para obtener el certificado matrimonial. Una vez más le informaron que los documentos de inscripción no se habían presentado. Por segunda vez se comunicó con el Juez querellado. Éste le prometió enviar los documentos nuevamente, lo cual no ocurrió.

En definitiva, en un período de once (11) meses, el Sr. Mitchell se comunicó en cinco (5) oportunidades con la Oficina del mencionado Juez y le envió dos (2) facsímiles sin obtener respuestas a dichas comunicaciones, ni una solución al problema.

El 5 de enero de 2000, seis meses después de haber celebrado el matrimonio Mitchell-Wallace, el querellado rindió el Índice de Affidávits o Declaraciones Juradas por Jueces correspondientes a la semana del 4 al 10 de julio de 1999, haciendo constar el matrimonio celebrado el 9 de julio de 1999.

El 22 de junio de 2000, el Sr. Mitchell acudió a la Oficina de la Administracion de los Tribunales, (en adelante O.A.T.), en donde recibió orientación sobre el asunto. Allí se comunicaron con el querellado, quien se comprometió a someter los documentos ante el Registro ese mismo día.

El 6 de julio de 2000, los mencionados documentos fueron presentados al Registro.

El 10 de julio de 2000, el Sr. Mitchell presentó la queja, debidamente juramentada, que dio origen al presente procedimiento disciplinario.

En la correspondiente querella se le imputa al Juez González Porrata-Doria haber violado el Canon I de los de Ética Judicial,

al dejar de someter los documentos del matrimonio Mitchell-Wallace a pesar de los múltiples requerimientos realizados por el Sr. Mitchell para lograr la inscripción de su matrimonio. En el segundo cargo, se le imputa violación al Canon V, al esperar hasta el 5 de enero de 2000 para remitir el informe semanal conteniendo la relación de ritos matrimoniales celebrados en la semana correspondiente del 4 a 10 de julio de 1999, incumpliendo sus deberes administrativos en el ejercicio de las funciones no judiciales en la celebración de matrimonios. En el tercer cargo, se le imputa al querellado haber incurrido en conducta contraria al Art. 24 de la Ley del Registro Demográfico, 24 L.P.R.A. § 1163, al no entregar al encargado del Registro los documentos para inscribir el matrimonio en el término de diez (10) días. Finalmente, como cuarto cargo, se le imputa incurrir en conducta impropia e ilegal al no enviar ni entregar en el plazo de diez (10) días establecido en la ley, los documentos matrimoniales de Mitchell-Wallace celebrado el 9 de julio de 1999. Tal conducta contradice los incisos (c) y (e) del Art. 42 de la Ley del Registro Demográfico de Puerto Rico, 24 L.P.R.A § 1301, y la Regla 16 inciso (c) de las Reglas de Administración del Tribunal de Primera Instancia, 4 L.P.R.A. Ap.II-A.

Al responder a la querella, el querellado aceptó los hechos descritos anteriormente y trató de justificar la tardanza en la inscripción del matrimonio aduciendo que los testigos instrumentales firmaron el acta en el espacio equivocado, y que dicho error no permitía la entrada del documento al Registro

hasta que fuera corregido. Según él, la situación se complicó porque los testigos no eran residentes de Puerto Rico, sino de los Estados Unidos. Alega que el querellado trató de corregir el defecto con otro formulario, en donde el Juez, como medida preventiva, había tomado las firmas de las partes, pero que éste había sido archivado en otro expediente y no se podía localizar. Finalmente, arguye que cuando dicho documento apareció pudo subsanar el defecto e inscribir el matrimonio. No obstante explicó que para minimizar los daños expidió a favor de los contrayentes una certificación provisional del acto matrimonial.

Señalada la vista evidenciaria para el 16 de noviembre de 2001, las partes sometieron a la Comisión el Informe de Conferencia Conjunto, en el cual se estipula la prueba y los hechos relatados. Además, las partes solicitaron que se sometiera el caso de acuerdo al expediente y se obviara la vista evidenciaria. La Comisión aceptó las solicitudes de las partes.

El 14 de marzo de 2002, la Hon. Comisión rindió su informe ante este Tribunal.

I

El Canon I de los de Ética Judicial, 4 L.P.R.A. Ap. IV-A, dispone:

> La fe de un pueblo en la justicia, como valor esencial de la democracia, debe ser mantenida por los tribunales a los más altos niveles de la responsabilidad pública.
>
> En el ejercicio de su delicada función, aquellas personas llamadas a impartir justicia, conscientes de la posición que ocupan en la sociedad y de la trascendencia de su misión, deben velar por que **sus actuaciones respondan a normas de conducta que honren la integridad e**

**independencia de su ministerio y estimulen el respeto y confianza en la judicatura**. (Énfasis suplido.)

La relación de hechos nos exigen concluir que efectivamente este canon fue violado. La conducta desplegada por el Juez querellado merece ser reprochada y reprendida.

En el curso de la espera por la radicación de los documentos requeridos, el Juez querellado reiteradamente le afirmó <u>falsamente</u> al Sr. Mitchell que todo estaba arreglado, a sabiendas de que no era así. Su actuación fue irresponsable y exhibió una conducta carente de la verticalidad y honradez que se espera de todo miembro de la judicatura.

Es significativo, que no fue hasta que el Sr. Mitchell presentó su queja ante la O.A.T., y desde allí lo interrogaron por dicha falta, cuando el Juez querellado finalmente completó el trámite de presentación de los documentos al Registro.

Al faltar a la verdad en su función pública, desde o fuera del escaño judicial, el juez no sólo deshonra la integridad del sistema de justicia, sino que genera desconfianza de la sociedad en la función judicial.

Las actuaciones de nuestros jueces, quienes tienen la misión de juzgar a sus semejantes, deben estar desprovistas de cualquier atisbo de mentira, de iniquidad y de injusticia. Ellos deben velar porque su desempeño, tanto en sus funciones judiciales como ministeriales y hasta en la esfera privada, sean dignas del lugar que en la sociedad ocupan.

> Dentro de nuestra organización política, social y jurídica, la figura del juez ocupa un lugar de singular importancia. Su nombramiento es producto del consenso habido entre las Ramas Legislativa y Ejecutiva de

gobierno, las cuales depositan en ellos la confianza de nuestro Pueblo con la esperanza de que la administración de la justicia se llevará a cabo <u>por personas cuya conducta sea intachable</u>. A esas ramas de gobierno les corresponde el primer e importantísimo cedazo para nombrar candidatos idóneos. <u>Nos corresponde a nosotros, la Rama Judicial, cerciorarnos que esa idoneidad sea la expresión constante en la conducta de los jueces</u>. (Subrayado nuestro.) <u>In re Martínez González</u>, res. el 26 de junio de 2000, 2000 TSPR 96.

II

Los últimos tres cargos los discutiremos en conjunto pues están íntimamente relacionados.

Es sabido que el matrimonio es una institución civil claramente protegida y establecida en nuestro orden social y jurídico, por lo cual, ocupa un lugar predominante y fundamental en la sociedad puertorriqueña.[1] <u>Pérez Vega v. Procurador Especial de Relaciones de Familia</u>, res. el 27 de abril de 1999, 99 TSPR 64; <u>Sostre Lacot v. Chelín of P.R.</u>, Inc., 126 D.P.R. 781 (1990).

El Art. 68 de nuestro Código Civil, 31 L.P.R.A. 221, con relación al matrimonio dispone:

> El matrimonio es una institución civil que procede de un contrato civil en virtud del cual un hombre y una mujer se obligan mutuamente a ser esposo y esposa, y a cumplir

---

[1] En <u>Almodóvar v. Méndez Román</u>, 125 D.P.R. 218, 236 (1990), comentamos:

> Es indudable que se sigue valorando la familia matrimonial como el régimen socialmente más deseable...A estos efectos Serna Meroño señala que "el matrimonio tiene 'significado de fundamento de la familia, institución ésta a la que los poderes públicos deben protección jurídica', y no puede ignorarse que, en principio, el matrimonio confiere certeza en la paternidad, lo cual va a incidir de manera directa sobre el régimen de las acciones, 'haciendo más fácil la reclamación de una filiación matrimonial y más difícil su impugnación'".

el uno para con el otro los deberes que la ley les impone. Será válido solamente cuando se celebre y solemnice con arreglo a las prescripciones de aquélla, y sólo podrá disolverse antes de la muerte de cualquiera de los cónyuges, en los casos expresamente previstos en este título.

Como institución genera entre los contrayentes un estado civil que es fuente de importantes deberes y obligaciones, tanto jurídicos como sociales.[2] <u>Pérez Vega v. Procurador Especial de Relaciones de Familia</u>, res. el 27 de abril de 1999, 99 TSPR 64.

Los contrayentes ingresan a la institución matrimonial de forma solemne y ponderadamente conscientes de su importancia, y esperanzados de lograr sus más altos propósitos.

El Certificado de Matrimonio otorgado por el Registro es la prueba por excelencia de las circunstancias que constan en dicho certificado, ya que por disposición estatutaria constituye evidencia *prima facie* del matrimonio. <u>Pueblo v. Jordán Tarraza</u>, 118 D.P.R. 592 (1987); <u>Pueblo v. Ramírez</u>, 65 D.P.R. 680 (1946).

> A petición de parte interesada,... el Secretario de Salud o la persona autorizada por él, suministrará copia certificada de cualquier certificado de nacimiento, casamiento o defunción que se haya inscrito o registrado en el Registro General...La copia del récord de cualquier nacimiento, casamiento o defunción, después que sea certificada por el Secretario de Salud o por la persona autorizada por él, constituirá evidencia prima facie ante

---

[2]   "Las instituciones demandan una lealtad y una sinceridad de propósitos de sus adherentes que están muy por encima del anárquico ejercicio de la voluntad. La institución del matrimonio 'significa para todos un sistema de vinculaciones jurídicas preestablecidas en orden a una finalidad y públicamente conocidas, al que libérrimamente prestan su adhesión las personas capaces de ello, obligándose a su cumplimiento respecto al copartícipe cuya libre elección les compete.'" Opinión disidente del Juez Asociado Sr. Díaz Cruz emitida en <u>Figueroa Ferrer v. E.L.A.</u>, 107 D.P.R. 250, 289 (1978)

todas las cortes de justicia de los hechos que  consten en la misma. 24 L.P.R.A. § 1237.

Nos hacemos eco de lo que ya pronunciamos una vez en Pueblo v. Jordán Tarraza, *supra*, pág. 596:

> Según hemos visto, aquí la Ley Núm. 24 del Registro Demográfico autoriza la admisibilidad del certificado por mandato expreso del Legislador. Ello se justifica en atención a los **diversos trámites que estatutaria y reglamentariamente tienen que cumplir los interesados y el celebrante** –antes, durante y después– de la celebración de un  matrimonio, a saber: análisis de sangre y examen médico de la pareja para obtener la "Licencia Matrimonial" previa; suministrar información personal y de sus progenitores solicitada en el formulario impreso del "Certificado"; comparecencia ante la persona autorizada para celebrarlo (juez, sacerdote, ministro o rabino; realización de la ceremonia con la presencia de dos (2) testigos ante quienes los contrayentes declaran su propósito de unirse; suscripción y firma documental por los contrayentes, testigos y el celebrante, y remisión e inscripción del certificado en el Registro Demográfico, por cuya omisión el celebrante puede cometer delito menos grave. Obviamente, **estos requisitos rodean el acto de suficiente garantía circunstancial de veracidad y confieren racionalmente al certificado, como documento, presuntiva legitimidad.** (Énfasis suplido.)

La autenticidad de un Certificado de Matrimonio expedido por el Registro está fuera de toda discusión y constituye una excepción a la prueba de referencia. Regla 79 y 65 de las de Evidencia de 1979, 32 L.P.R.A. Ap. IV.

La escueta certificación que el Juez querellado otorgó al Sr. Mitchell el 1 de agosto de 1999, dando fe solamente de haber oficiado ese matrimonio, ni siquiera satisface los requisitos de la Regla 65(L)de las de Evidencia[3], *supra*, ya que ni siquiera

---

[3] La Regla 65(l) de las de Evidencia de 1979, 32 L.P.R.A. Ap. IV, dispone como una de las excepciones a la prueba de referencia:

(L) Certificados de matrimonio, bautismo y otros similares.–Una declaración referente al nacimiento, matrimonio, fallecimiento, raza, linaje, parentesco, por

contiene los datos presentes en el Certificado de Matrimonio que expide el Registro. De poco consuelo sirve a los contrayentes que a lo largo de casi un año insistían que el Juez querellado cumpliera con su obligación de inscribir el acta correspondiente para que el matrimonio celebrado cumpliera con todos los requisitos de ley.

> En cierto sentido, sin el certificado oficial, la sola prueba testifical por quien **presenció u ofició** el acto de celebración es más **débil y dudosa**. Difícilmente, salvo un testigo de memoria prodigiosa –capaz de retener y reproducir sin error en el tribunal toda la información requerida en el certificado– podría demostrarse cabal e íntegramente que fueron satisfechos todos los requisitos de ley para la validez del enlace. Sin dicho certificado, básicamente tendríamos información fragmentada y solamente una conclusión al efecto. (Énfasis suplido.) Pueblo v. Jordán Tarraza, *supra*, 598 (1987).

El Juez querellado tardó casi un año en completar el trámite de una obligación ministerial que debió haber concluido en los primeros diez (10) días de haber oficiado en el matrimonio de la pareja Mitchell-Wallace. La justificación que aduce para explicar la considerable dilación generada por su personal negligencia al no revisar adecuadamente el documento que tenía que radicar con la firma de los contrayentes, los testigos instrumentales y la suya propia no nos convence. No nos ha detallado las gestiones que realizó para subsanar su omisión o

---

consanguinidad o afinidad u otro hecho similar del historial familiar de una persona, si la declaración estuviere contenida en un certificado de quien ofició la ceremonia correspondiente, efectuó un matrimonio o administró un sacramento, siempre que quien la oficiare fuere una persona autorizada por ley o por los reglamentos de una organización religiosa para celebrar los actos informados en el certificado, y éste fuera expedido por quien lo hizo en el momento y lugar de la ceremonia o

corregir el defecto para proceder a la presentación de los documentos al Registro. Nos resulta inverosímil que al cabo de un año haya aparecido el nuevo certificado que supuestamente se había extraviado, y en el cual, como medida preventiva, se habían tomado las firmas de los contrayentes y testigos.

La actuación de este funcionario público denota grave irresponsabilidad y menosprecio a sus obligaciones y a la función social que ejecuta en la celebración de matrimonios. Su comportamiento es contrario al Art. 24 de la Ley del Registro Demográfico de Puerto Rico, 24 L.P.R.A. § 1163, que dispone:

> Toda persona autorizada por la ley, ante la que se hubiere celebrado el matrimonio, estará obligada a entregar dentro de los diez días siguiente a la celebración del mismo, al encargado del registro del distrito en que tuvo lugar dicha ceremonia, la licencia matrimonial y la declaración jurada que hubiesen presentado los contrayentes de acuerdo con las disposiciones de la ley, junto con la certificación de la celebración del matrimonio, que expresará la fecha y lugar en que se hubiera celebrado el mismo y contendrá las firmas del celebrante y contrayentes y de los testigos presenciales del acto.

Tal conducta es a su vez constitutiva de delito según lo dispone el Art. 42, incisos (c) y (e) de la Ley de Registro Demográfico, 24 L.P.R.A. § 1301:

> Toda persona que por [de][sic] sí o actuando como oficial, agente o empleado de otra, o de una corporación o sociedad:
> ...
> (c) estando obligada por las disposiciones de esta Parte a llevar y presentar en el tiempo determinado un certificado de nacimiento, casamiento o defunción para ser registrado en la oficina del registrador local deje de hacerlo que al ser requerido para que lo remita a la persona encargada de registrarlo, deje o rehúse cumplir sus

> sacramento, o dentro de un tiempo razonable después del mismo.

deberes de acuerdo con lo que en la presente se dispone, o

...

(e) que siendo persona autorizada por la ley para celebrar matrimonios, celebre alguno sin el requisito de la licencia matrimonial, o que deje de enviar o rehúse enviar al registrador local dicha licencia matrimonial y el certificado de matrimonio de acuerdo con las disposiciones de esta Parte, será culpable de delito menos grave y convicta que fuere, se le impondrá una multa que no excederá de quinientos (500) dólares o reclusión por un término que no exceda de seis (6) meses, o ambas penas a discreción del tribunal;

Dicha actuación se agrava por su omisión en cumplir con su obligación de informar o rendir el Índice de Affidávit o Declaraciones Autorizadas correspondiente a la semana en que se celebró el referido matrimonio, y no es hasta seis (6) meses más tarde que se rinde ese índice sin mencionarse explicación alguna que justifique tan prolongada tardanza.

El Canon V de los Cánones de Ética Judicial de Puerto Rico obliga a todo juez a cumplir **cuidadosa y diligentemente** **las obligaciones administrativas** que le imponen las leyes y los reglamentos aplicables a la Rama Judicial y las instrucciones de la Oficina de la Administración de los Tribunales. 4 L.P.R.A. Ap. IV-A.

La Regla 16, Inciso (c) de las Reglas de Administración del Tribunal de Primera Instancia, *supra*, establece que los jueces del Tribunal de Primera Instancia deberán remitir los lunes de cada semana al Director Administrativo de los Tribunales el Informe sobre el Índice de Affidávits o Declaraciones Autorizadas, expresando la labor realizada en estos asuntos.

Por otra parte, la Orden para Disponer las Normas que regirán los aspectos  de las Funciones no Judiciales de los Jueces que

corresponde al inciso 2 D de la Orden Administrativa de 30 de julio de 1975 establece que semanalmente el juez deberá rendir un informe a la O.A.T., conteniendo una relación de los ritos matrimoniales celebrados en la semana, incluyendo el número o números de affidávits, el nombre de los contrayentes, fecha, hora y lugar de celebración, honorarios percibidos, si algunos, y cualquier otra información que requiera el Director Administrativo de los Tribunales en el formulario que prepara para dicho Informe Semanal.

La conducta que hoy nos toca juzgar en el comportamiento del Juez González Porrata-Doria, en una ampliamente reñida con la ley, con los Cánones de Ética Judicial, y los valores que los ciudadanos esperan que los jueces observen. Tal ausencia de responsabilidad y de premura para cumplir con un mínimo de obligaciones que la ley le exige, desvirtúa la imagen judicial.

En vista de que la conducta del querellado fue impropia e ilegal, y denota grave menosprecio hacia la función que desempeña, se hace necesario imponerle una sanción disciplinaria al Juez Ricardo J. González Porrata-Doria.

Se dictará sentencia suspendiéndole de empleo y sueldo por el término de tres (3) meses.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

  Ricardo J. González Porrata
Doria – Juez del Tribunal
De Primera Instancia
Sala de Guayama

                             AD-2001-1          Conducta
                                               Profesional

SENTENCIA

San Juan, Puerto Rico, a 24 de septiembre de 2002

    Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se dicta sentencia decretando una sanción disciplinaria de tres meses de suspensión de empleo y sueldo al Juez Ricardo J. González Porrata-Doria. Dicha suspensión será efectiva a partir de la fecha de notificación de esta Sentencia.

    Notifíquese a la Directora de la Oficina de Administración de los Tribunales.

    Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Naveira de Rodón y el Juez Asociado señor Corrada del Río limitarían la sanción impuesta a un mes de suspensión. El Juez Asociado señor Rivera Pérez disiente de la sanción disciplinaria impuesta, por entender que no guarda proporción con la falta cometida por el Juez querellado; limitaría la sanción disciplinaria a una censura, según fue recomendado por la Comisión de Disciplina.

                       Patricia Otón Olivieri
                 Secretaria del Tribunal Supremo