ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL IV**

| | | |
|---|---|---|
| **DAISY PADILLA PÉREZ**<br>DEMANDANTE(S)-RECURRIDA(S)<br><br>**V.**<br><br>**UNIVERSAL INSURANCE COMPANY Y OTROS**<br>DEMANDADA(S)-PETICIONARIA(S) | **KLCE202400922** | *CERTIORARI*<br>procedente del Tribunal de Primera Instancia, Sala Superior de **SAN JUAN**<br><br>Caso Núm.<br>**SJ2023CV06374 (801)**<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, Jueza Rivera Marchand y la Juez Barresi Ramos.

*Barresi Ramos*, juez ponente

# S E N T E N C I A

En San Juan, Puerto Rico, hoy día 10 de septiembre de 2024.

Comparece ante este Tribunal de Apelaciones, **UNIVERSAL INSURANCE COMPANY** (**UNIVERSAL**) mediante una *Petición de Certiorari* y *Solicitud Urgente de Orden en Auxilio de Jurisdicción* instada el 23 de agosto de 2024. En su recurso, nos solicita que revisemos la *Resolución* promulgada el 9 de agosto de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan.[1] En la alusiva determinación, se declaró *no ha lugar* la *Moción en Solicitud de Orden para Determinación Preliminar Bajo Reglas 109(A) y 1008 de Evidencia en Torno a Admisibilidad de Testimonio sobre Contenido de Video* presentada el 18 de junio de 2024 por **UNIVERSAL**.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

---

[1] Dicho dictamen judicial fue notificado y archivado en autos el 9 de agosto de 2024. Apéndice de la *Petición de Certiorari*, págs. 1- 6.

## - I -

El 5 de julio de 2023, la señora **DAISY PADILLA PÉREZ** (señora **PADILLA PÉREZ**) entabló una *Demanda* sobre daños y perjuicio.[2] Esencialmente, alegó que conducía un vehículo marca Kia, modelo Forte, por la Ave. Tnte. César Luis González en San Juan. Al llegar a la intersección con la Ave Chardón, donde los semáforos estaban inoperantes, detuvo su marcha y fue impactada por un automóvil marca Acura, modelo TL, conducido por el señor Germán Hernández Vega, quien estaba asegurado por **UNIVERSAL**. Tiempo después, el 30 de octubre de 2023, presentó una *Demanda Enmendada*.[3] Así las cosas, el 7 de noviembre de 2023, **UNIVERSAL** presentó su *Contestación a Demanda Enmendada* en la cual incluyó sus defensas afirmativas.[4] A los pocos días, el 15 de noviembre de 2023, las partes presentaron el *Informe para el Manejo de Caso*.[5]

Luego de varios incidentes procesales, el 26 de abril de 2024, **UNIVERSAL** presentó una *Moción en Solicitud de Orden para Obtener Grabación de Vista Criminal*.[6] El 30 de abril de 2024, se emitió una *Orden* autorizando la regrabación de los procedimientos.[7]

El 10 de mayo de 2024, **UNIVERSAL** presentó *Moción en Solicitud de Orden-Citación para Obtener Video Grabaciones en Posesión de Terceros.*[8] Adujo que al escuchar la regrabación de la audiencia advino en conocimiento de la existencia de dos (2) videos que capturaron los hechos del accidente y están en posesión de terceros: MAPFRE y Autogermana. Unos días después, 13 de mayo de 2024, se dictó *Orden* declarando con lugar la solicitud para obtener copia de las videograbaciones en posesión de MAPFRE y Autogermana.[9] Al día siguiente, en horas de la tarde, se presentó el *Informe*

---

[2] Apéndice de la *Petición de Certiorari*, págs. 7- 12.
[3] *Íd*., págs. 13- 18.
[4] *Íd*., págs. 19- 22.
[5] *Íd*., págs. 23- 27.
[6] *Íd*., págs. 28- 31.
[7] *Íd*., pág. 32.
[8] *Íd*., págs. 33- 34.
[9] *Íd*., pág. 35.

*sobre Conferencia con Antelación al Juicio*.[10] El 15 de mayo de 2024, se celebró la *Conferencia con Antelación al Juicio* y se intimó *Orden de Señalamiento y Manejo de Vista en su Fondo Presencial* pautando audiencia para los días 11 y 12 de septiembre de 2024.[11]

El 18 de junio de 2024, **UNIVERSAL** presentó una *Moción en Solicitud de Orden para Determinación Preliminar Bajo Reglas 109(A) y 1008 de Evidencia en Torno a Admisibilidad de Testimonio sobre Contenido de Video*.[12] Peticionó una determinación preliminar sobre la admisibilidad del testimonio sobre el contenido de ciertos videos que se borraron, ello al amparo de las excepciones a la Regla de la Mejor Evidencia, establecidas por la Regla 1004 de Evidencia Secundaria; incluyendo dos (2) declaraciones juradas y una transcripción de la regrabación de audiencia.

Más tarde, el 9 de julio de 2024, la señora **PADILLA PÉREZ** presentó su *Réplica y Oposición a "Moción en Solicitud de Orden para Determinación Preliminar Bajo Reglas 109 (A) y 108 de Evidencia en Torno a Admisibilidad de Testimonio sobre Contenido de Video"*.[13] Al tiempo, el 9 de agosto de 2024, se dictaminó la *Resolución* impugnada.

En desacuerdo, el 12 de agosto de 2024, **UNIVERSAL** presentó una *Moción de Reconsideración de Resolución para Determinación Bajo Regla 109 (A) de Evidencia para la Admisibilidad de Testimonio sobre Contenido de Video no Disponible Bajo las Excepciones a la Regla 1002 sobre la Mejor Evidencia Establecidas en la Regla 1004 de Evidencia Secundaria*.[14] Subsiguientemente, el 13 de agosto de 2024, se pronunció *Orden* declarando no ha lugar la solicitud de reconsideración.[15]

---

[10] Apéndice de la *Petición de Certiorari*, págs. 36- 66.

[11] *Íd*., págs. 67 y 68. La *Minuta* puntualiza que luego de discutir el informe de conferencia con antelación a juicio se aprobó el mismo como acta que regirá los procedimientos. Es menester señalar que en la parte **VIII. Prueba Testifical**, **UNIVERSAL** hizo mención de que el Agente Ercilio Nieves López testificaría "sobre el informe de accidente, sobre su investigación, sobre el contenido de los videos del accidente observados por él y utilizados para su investigación, admisible bajo la Regla 1004(a) y 1008 de Evidencia". Ello no fue objetado por la señora **PADILLA PÉREZ**. *Íd*., pág. 44.

[12] *Íd*., págs. 69- 77.

[13] *Íd*., págs. 78- 83.

[14] *Íd*., págs. 84- 88.

[15] *Íd*., pág. 89.

Inconforme, el 23 de agosto de 2024, **UNIVERSAL** recurrió ante este foro intermedio revisor señalando el(los) siguiente(s) error(es):

> Erró el TPI al no aplicar la excepción a la Regla de la Mejor Evidencia establecida en la Regla 1004 (A) de Evidencia Secundaria al declarar inadmisible el testimonio de un testigo sobre el contenido de grabaciones de video del accidente que él observó y que ya no están disponibles porque fueron borradas sin mediar intervención de la parte proponente.

> Erró el TPI al establecer como requisito para la aplicación de las excepciones establecidas en la Regla 1004 de Evidencia que para que el testimonio de un testigo sea admisible como evidencia secundaria, el testigo que vaya a declarar sobre el contenido de una grabación de video que fue borrada sin mediar intervención de la parte proponente, tiene que tener conocimiento personal de los hechos que observó en la grabación.

> Erró el TPI al caracterizar como prueba de referencia inadmisible las grabaciones de video que ya no existen porque fueron borradas sin mediar intervención de la parte proponente.

El 26 de agosto de 2024, intimamos *Resolución* en la cual, entre otras cosas, concedimos un plazo hasta el 3 de septiembre de 2024, a las 12:00 del mediodía, para exponer posición sobre el recurso y la solicitud de *auxilio de jurisdicción* a la señora **PADILLA PÉREZ**. El 29 de agosto de 2024, la señora **PADILLA PÉREZ** presentó su *Oposición a Petición de Certiorari y a Solicitud Urgente de Orden en Auxilio de Jurisdicción*. En resumen, argumentó que las videograbaciones en controversia son inadmisibles por falta de autenticación. Expuso además que, **UNIVERSAL** pretende utilizar al Agente Ercilio Nieves López para declarar sobre lo que recuerda del contenido del video que pudo ver presuntamente una sola vez.

Evaluado concienzudamente el expediente del caso, y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A - *Certiorari*

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las

órdenes o resoluciones interlocutorias decretadas por una corte de inferior instancia judicial.[16] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[17]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[18] Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[19]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[20] La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[21] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2) en asuntos relacionados a privilegios evidenciarios;
> (3) en casos de anotaciones de rebeldía;
> (4) en casos de relaciones de familia;
> (5) en casos revestidos de interés público; o
> (6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[22]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de

---

[16] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[17] *Íd.*
[18] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).
[19] *Íd.*
[20] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra.*
[21] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).
[22] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).

2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones (Reglamento).[23]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[24] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;
> (D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[25]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[26] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[27] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*. La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[28]

---

[23] *McNeil Healthcare v. Mun. Las Piedras I, supra,* pág. 404; *800 Ponce de León v. AIG, supra.*
[24] *Íd.*
[25] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe´s European Shop,* 183 DPR 580 (2011).
[26] *García v. Padró,* 165 DPR 324, 335 esc. 15 (2005).
[27] *Mun. Caguas v. JRO Construction, Inc.,* 201 DPR 703, 712 (2019).
[28] *Scotiabank v. ZAF Corp. et al.,* 202 DPR 478, 486– 487 (2019); *Mun. Caguas v. JRO Construction Inc., supra.*

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[29] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[30]

### - B - LA REGLA DE MEJOR EVIDENCIA Y LA AUTENTICIDAD

Como regla general, "nuestro ordenamiento probatorio, en o fuera del cuerpo de las Reglas de Evidencia, no exige determinada forma para establecer un hecho".[31] Empero, cuando una parte tiene el propósito de "probar el contenido de un escrito, **una grabación** o una fotografía se requiere la presentación del original".[32] Ello se conoce como la *Regla de la Mejor Evidencia* y como una de las reglas de exclusión.[33] Sustancialmente, se discierne por *original* el "escrito o la **grabación misma** o cualquier contraparte de éstos, siempre que la intención de la persona que los ejecuta o emita sea que éstos tengan el mismo efecto que aquellos...".[34]

Nuestro derecho probatorio ha instituido que para ser admisible la evidencia presentada, además de pertinente, debe ser *autenticada.* Así, para que una evidencia sea admitida, la parte proponente viene obligada a efectuar su *autenticación.*[35] Incluso, la Regla 901 de las de Evidencia, contiene una lista, no taxativa, de métodos para autenticar la evidencia, "por lo que la autenticación no tiene que realizarse mediante un método específico".[36] A estos efectos, la Regla 901 (A) de las de Evidencia, instaura que "[e]l requisito de autenticación o identificación como una condición previa a la

---

[29] *García v. Asociación*, 165 DPR 311, 322 (2005).

[30] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

[31] *Santiago Torres v. Pérez López*, 174 DPR 241, 245 (2008); *Pueblo v. Jordán Tarraza*, 118 DPR 592 (1987).

[32] Regla 1002 de las Reglas de Evidencia, 32 LPRA Ap. VI R. 1002. (énfasis nuestro).

[33] *Pueblo v. Echevarría Rodríguez I*, 128 DPR 299, 331 (1991).

[34] Regla 1001 (c) de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 1001(c). (énfasis nuestro).

[35] *Pueblo v. Bianchi Álvarez*, 117 DPR 484 (1986).

[36] Regla 901 de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 901; *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 813 (2020).

admisibilidad se satisface con la presentación de evidencia suficiente para sostener una determinación de que la materia en cuestión es lo que la persona proponente sostiene".[37] *Autenticar* una pieza de evidencia es probar que la misma es lo que su proponente alega que es.[38]

### - C - La Prueba de Referencia y la Regla de Evidencia Secundaria

Como máxima en nuestro derecho probatorio es inadmisible la *prueba de referencia*. Se define como las declaraciones [disímiles] que "la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado.[39] Entretanto, para que la prueba sea de referencia y le aplique la *regla de exclusión*, tiene que ser: (1) una declaración extrajudicial; (2) susceptible de ser cierta o falsa; (3) ofrecida en el juicio para que se admita en evidencia (*exhibit*); y (4) con el propósito de probar la verdad de lo aseverado. Cualquier declaración que no tenga alguna de estas cualidades, **no** es *prueba de referencia* y, por tanto, no le aplica la *regla de exclusión*.[40]

En ese contexto, las Reglas de Evidencia al considerar un balance de intereses provee para la presentación de contenidos escritos, grabaciones y fotografías. Específicamente, se codifica como *evidencia secundaria* al palio de la Regla 1004 de las de Evidencia. La precitada normativa tipifica lo siguiente:

> Será admisible otra evidencia del contenido de un escrito, **grabación** o fotografía que no sea el original mismo cuando:
> **(a) El original y el duplicado, si existiera, se han extraviado o destruido, a menos que quien lo propone los haya perdido o destruido de mala fe**.
> (b) El original y el duplicado, si existiera, no pudieron obtenerse por ningún procedimiento judicial disponible ni de ninguna otra manera.

---

[37] Regla 901(A) de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 901(A).

[38] *Rosado Reyes v. Global Healthcare, supra*, pág. 812; *Pueblo v. Echevarría Rodríguez I, supra.* Véase, además, Chiesa Aponte, op. cit., pág. 345.

[39] 32 LPRA Ap. VI, R. 801. Regla 801. Definiciones:
Se adoptan las siguientes definiciones relativas a *prueba de referencia*:
> (a) Declaración: Es (a) una aseveración oral o escrita; o (b) conducta no verbalizada de la persona, si su intención es que se tome como una aseveración.
> (b) Declarante: Es la persona que hace una declaración.
> (c) **Prueba de referencia: Es una declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado.** (énfasis nuestro).

[40] *Pueblo v. Lugo López*, 2024 TSPR 83; 214 DPR ___; *Pueblo v. Pérez Santos*, 195 DPR 262 (2016).

(c) El original está en poder de la parte contra quien se ofrece y ésta no lo produce en la vista a pesar de haber sido previamente advertida de que se necesitaría producirlo en la vista.

(d) El original no está íntimamente relacionado con las controversias esenciales y resultare inconveniente requerir su presentación.[41]

Ahora bien, el profesor Chiesa Aponte menciona que: "[n]o es suficiente con una escueta alegación de que hay duda con la autenticidad del original; debe explicarse la razón para la tal duda".[42] Es decir, ante una genuina controversia sobre la *autenticidad* del original, no es suficiente con examinar un duplicado. Ante la posibilidad de falsificación o fraude, es esencial examinar el original, pues cobran importancia elementos, tales como el color del escrito, los rasgos de la letra del presunto autor y otros, para lo cual sirve mucho mejor el original que el duplicado. Por supuesto, si la alegación es que hubo alteración en el documento, en el sentido que el alegado duplicado no lo es en realidad, es evidente la necesidad de examinar el alegado original y compararlo con el alegado duplicado.[43]

Ello implica que, como *contraparte* a la Regla de la Mejor Evidencia, existe la Regla de Evidencia Secundaria que aplica para aquellos casos en que, de ordinario, por **tratarse de prueba de contenido**, debe presentarse el documento original.[44] Es *evidencia primaria* aquella de mejor calidad y valor probatorio para probar un hecho y será *secundaria* cualquier otra de inferior calidad que no sea primaria. En resumidas cuentas, mediante la aludida Regla 1004 de Evidencia "la evidencia secundaria se permite cuando no está disponible [el] original ni [el] duplicado. Si hay un duplicado disponible y el duplicado es tan admisible como el original, entonces no debe permitirse otra evidencia que no sea el original o el duplicado".[45]

Ciertamente, al evaluar el alcance de la *Regla de Evidencia Secundaria* es menester señalar que, como excepción, la susodicha norma no es de

---

[41] 32 LPRA Ap. VI, R. 1004. (énfasis nuestro).

[42] Refiérase a E. L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, San Juan, Situm, 2016, págs. 372 y 376.

[43] *Íd*. E. L. Chiesa Aponte, op. cit., en las pág. 376. Refiérase, además: R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, 4ta edición, (2015), págs. 595– 599.

[44] *Íd*. E. L. Chiesa Aponte, op. cit., pág. 372.

[45] *Íd*. E. L. Chiesa Aponte, op. cit., pág. 378.

aplicabilidad en caso de que la parte proponente lo haya perdido o destruido de mala fe con la intención de que no pueda presentarse. En ese sentido, para que podamos tan siquiera hablar de la posibilidad de la excepción, la parte proponente de la *evidencia secundaria* debe demostrar que el original existía, pero que se ha perdido, pues una búsqueda razonable no dio con su paradero, debido a que se extravió o ha sido destruido. Además, se debe comprobar que esta pérdida o la destrucción no ocurrió de mala fe.

- III -

UNIVERSAL argumenta que el Agente Nieves López, quien investigó el accidente, observó las grabaciones de video de varias cámaras de seguridad que captaron los hechos de la colisión ocurrido el 7 de julio de 2022. Tales cámaras de seguridad pertenecen a entidades terceras. Aun así, UNIVERSAL realizó esfuerzos razonables para recopilar las grabaciones de las cámaras de seguridad para mostrar con claridad los hechos del incidente. Acompaño su escrito con dos (2) declaraciones juradas. Uno del señor Anthony Maldonado González, Manager Expert, quien atestiguo mediante *Declaración Jurada* suscrita el 13 de junio de 2024 que la videograbación del sistema de cámaras de MAPFRE no está disponible por haberse borrado en conformidad con la política de preservación cuyo término es de ciento ochenta (180) días. Otro del señor Daniel A. Mujica Dones, Gerente de Sistemas de Autogermana Inc., quien afirmó que la grabación que haya efectuado el sistema de cámaras de seguridad para la fecha del accidente no está disponible ello en consideración a la política de preservación cuyo plazo es de aproximadamente sesenta (60) días.

De otro lado, la señora PADILLA PÉREZ fundamentó que UNIVERSAL anunció por primera vez la presentación de los videos de seguridad en el *Informe con Antelación al Juicio*, cuando inicialmente el Agente Nieves López declararía únicamente sobre la investigación efectuada sin hacer mención sobre los videos del accidente. Asimismo, punteó que las videograbaciones son inadmisibles por falta de autenticación. Añadió que UNIVERSAL pretende

sustituir el contenido de unas grabaciones que no existen y no fueron autenticadas.

En este caso, el Agente Nieves López fue el policía a cargo de la investigación de la colisión y quien redactó un *Informe* detallando lo sucedido según haya surgido de su apreciación del lugar del accidente y entrevista de los afectados, así como testigos, si alguno. Ello basándose en sus conocimientos, experiencia y destrezas (adiestramientos). Como parte de la redacción de este *Informe,* el Agente Nieves López observó el(los) video(s) de seguridad.[46]

Como regla general, no es admisible el testimonio de una persona que se dispone a testificar sobre el contenido de una grabación o un video que no existe, pues, en esencia, sería necesario presentar el video original o en su defecto un duplicado. Empero, como toda norma general existen las excepciones. Precisamente, la Regla 1004 nos presenta lo que se conoce como *evidencia secundaria.*

La Regla 109 de Evidencia de Puerto Rico pauta lo atinente a la audiencia sobre las determinaciones preliminares para la admisibilidad de evidencia.[47] Mediante este proceso un Tribunal determina las cuestiones preliminares con relación a la capacidad de una persona para ser testigo, la existencia de un privilegio o la admisibilidad de la evidencia. Esta determinación, ya sea en la afirmativa o en la negativa a la admisibilidad de evidencia, en este caso secundaria, es inherente a la labor del tribunal *a quo*, a quien le corresponde adjudicar dicho petitorio de UNIVERSAL luego de la celebración de una audiencia. Así, colegimos que no se cumplió a cabalidad con el procedimiento para determinar si existen o no las excepciones que contempla la Regla 1004 sobre *evidencia secundaria.*

---

[46] La Regla 703 define la figura jurídica del **perito** como: (a) Toda persona está calificada para declarar como testigo pericial si posee especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficiente para calificarla como experta o perita en el asunto sobre el cual habrá de prestar testimonio. Si hubiere objeción de parte, dicho especial conocimiento, destreza, adiestramiento o instrucción deberá ser probado antes de que la persona testigo pueda declarar como perita. 32 LPRA Ap. VI, R. 703.

[47] 32 LPRA Ap. VI.

En consecuencia, al limitar el testimonio del Agente Nieves López por el fundamento de que "no es suficiente para sustituir el video con un testigo sin conocimiento personal de los hechos", a destiempo, se incidió en su proceder.

- **IV** -

Por los fundamentos antes expuesto, *expedimos* el auto de *certiorari* interpuesto el 23 de agosto de 2024; se declara **no ha lugar** la solicitud de auxilio de jurisdicción presentada el 23 de agosto de 2024 por Universal; *revocamos* la *Resolución* dictada el 9 de agosto de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan; y, en consecuencia, *devolvemos* el caso para la continuación de los procedimientos conforme a lo aquí resuelto. En ánimo de salvaguardar la economía procesal, durante el juicio, se deberá pasar prueba en conformidad con lo aquí determinado.

Al amparo de la Regla 35 (A)(1) de nuestro Reglamento, el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin tener que esperar por el recibo de nuestro mandato.[48]

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[48] Regla 35 (A)(1): "La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, **salvo que el Tribunal de Apelaciones disponga lo contrario**." 4 LPRA Ap. XXII-B R. 35.