EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Norma Meléndez Soberal<br>    Peticionaria<br><br>           v.<br><br>Edwin García Marrero<br>    Recurrido | Certiorari<br><br>2002 TSPR 119<br><br>157 DPR _____ |

Número del Caso: CC-2001-1019


Fecha: 12/septiembre/2002


Tribunal de Circuito de Apelaciones:
                    Circuito Regional II


Juez Ponente:
                    Hon. Héctor Urgell Cuebas


Abogada de la Parte Peticionaria:
                    Lcda. Nereida Rivera Navarro


Abogado de la Parte Recurrida:
                    Lcdo. Ignacio Vázquez Borges


Materia: Divorcio




        Este documento constituye un documento oficial del Tribunal Supremo
        que está sujeto a los cambios y correcciones del proceso de
        compilación y publicación oficial de las decisiones del Tribunal.
        Su distribución electrónica se hace como un servicio público a la
        comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Norma Meléndez Soberal

    Peticionaria

       v.

                          CC-2001-1019

Edwin García Marrero

    Recurrido

Opinión del Tribunal emitida por la Juez Asociada señora NAVEIRA DE RODÓN

San Juan, Puerto Rico a 12 de septiembre de 2002

I

**Los hechos que originaron la acción que hoy se encuentra ante nuestra consideración comenzaron el 19 de mayo de 1985, cuando el Sr. Edwin García Marrero y la Sra. Norma Meléndez Soberal decidieron formalizar su relación ante el Reverendo Antonio García de la Iglesia Unión Cristiana Misionera. Éstos contaban con diecinueve (19) años de edad. En el "Certificado de Matrimonio" que obra en autos aparece que la hermana de la contrayente, la Sra. Nilda L. Meléndez Soberal, compareció bajo juramento en calidad de tutora de su hermana menor de edad.**

**Ésta autorizó a la peticionaria a contraer matrimonio. La madre del contrayente, la Sra. Carmen Marrero Figueroa, prestó su autorización para el casamiento de su hijo. Casi cinco (5) meses después, el 6 de octubre de 1985, nació Edwin Yamil García Meléndez, producto de la relación entre los contrayentes.** Éstos permanecieron juntos por varios años y, dentro de esa unión, procrearon dos (2) hijos **los cuales se llevan entre sí un año de edad.**

El 7 de agosto de 1997, aproximadamente doce (12) años más tarde, el Sr. García Marrero presentó una demanda de liquidación de bienes contra la peticionaria Meléndez Soberal, alegando que las partes habían **cohabitado** como marido y mujer, y que como producto de esta cohabitación procrearon dos (2) hijos y establecieron una comunidad de bienes. Alegó que las partes habían concluido su relación, por lo que procedía una liquidación de la comunidad compuesta entre ambos.

**La peticionaria contestó negando expresamente el hecho de la convivencia como marido y mujer, además, reconvino** alegando que ellos habían contraído matrimonio de buena fe. **Expresó que por negligencia del Pastor Antonio García que ofició el matrimonio, el acta no fue enviada al Registro Demográfico para su inscripción. Continuó alegando que el Sr. García Marrero abandonó a su familia para irse a vivir con otra mujer. Solicitó el cincuenta por ciento (50%) de todos los bienes habidos en el matrimonio y que se mantuviese su residencia actual como hogar seguro de los menores Edwin Yamil y Emir Joely García Meléndez.**

El 25 de febrero de 1998, el tribunal dictó sentencia basándose en una estipulación habida entre las partes, la cual sólo contenía expresiones sobre la división de los bienes. En la sentencia, el tribunal simplemente incluyó lo que las partes habían estipulado en cuanto a la repartición de los bienes, los pasivos y activos habidos

entre ellos. Nada mencionó sobre la reconvención y el alegado matrimonio entre la Sra. Meléndez Soberal y el Sr. García Marrero.

Once (11) días antes de dictarse sentencia, el 14 de febrero de 1998, el Sr. García Marrero contrajo matrimonio con la Sra. Marilyn Guzmán Morales. Dicha unión se inscribió en el Registro Demográfico el 23 de febrero. Más de un año y medio después, el 2 de septiembre de 1999, la peticionaria radicó una demanda de divorcio por abandono y trato cruel contra el Sr. García Marrero. Alegó que las partes estaban casadas entre sí y que éste había expresado su intención de abandonar el hogar. Alegó además, que el Sr. García Marrero había cometido adulterio durante la existencia del vínculo matrimonial. Expresó que tenía interés en concluir con la sociedad legal de gananciales constituida entre ambos y proceder a la liquidación de bienes de la misma. El 22 de septiembre solicitó que el tribunal expidiera una orden dirigida al Registro Demográfico para que se inscribiera tardíamente el matrimonio contraído entre ella y el Sr. García Marrero. Expresó en dicha moción que el 18 de febrero de 1997 había solicitado una copia de certificado de matrimonio al Registro Demográfico y éste le había expedido una Certificación Negativa sobre Acta de Matrimonio, por lo que el matrimonio, si hubo uno, nunca se inscribió.

Por otra parte, el 30 de junio de 1998, la Iglesia Unión Cristiana Misionera emitió una certificación de que las partes habían contraído matrimonio pero que los documentos correspondientes nunca fueron llevados al Registro Demográfico por el Rvdo. Antonio García. Aunque certificaron sobre la celebración del matrimonio, añadieron que en los registros de la Iglesia no aparecía copia de documento alguno sobre la celebración del matrimonio. De lo antes expuesto, la Iglesia

concluyó, que el Sr. García Marrero y la Sra. Meléndez Soberal **no** estaban legalmente casados.[1]

El 18 de mayo de 2000 el demandado García Marrero presentó una moción de sentencia sumaria por derecho propio en la cual aceptó los hechos antes expuestos. Añadió que él y la Sra. Meléndez Soberal mantuvieron en realidad un matrimonio consensual en el que procrearon dos hijos. En base a estos hechos solicitó que como cuestión de derecho se declarase inválido el matrimonio entre él y la Sra. Meléndez Soberal, "por falta de consentimiento del padre o madre de la contrayente menor de edad."

El 28 de agosto de 2000, la Sra. Meléndez Soberal presentó una demanda enmendada en la cual incluyó a la Sra. Guzmán Morales como parte demandada,[2] ya que ésta y el Sr. García Marrero alegadamente habían contraído nupcias. Alegó específicamente que "de haberse celebrado entre los codemandados [García Marrero y Guzmán Morales] un matrimonio, el mismo [era] nulo ab initio por existir matrimonio válido vigente con la demandante [Meléndez Soberal]". Entre otras cosas, solicitó específicamente que se declarase "nulo ab initio el alegado matrimonio entre los codemandados."[3] Con respecto a esta alegación, los

---

[1] La confusa Certificación reza: "Yo, Alicia López, actual ministro en la Iglesia Unión Cristiana Misionera de Bayamón Gardens certifico que el Sr. Edwin García Marrero y la Sra. Norma Meléndez Soberal, contrajeron matrimonio el día 19 de mayo de 1985 y los documentos correspondientes no fueron llevados al Registro Civil por el Rvdo. Antonio García. En los registros de la Iglesia no aparece copia de ningún documento que legalice el matrimonio. Por lo antes expuesto, los antes mencionados no están legalmente casados".

[2] De los autos de instancia surge que la Sra. Marilyn Guzmán Morales fue debidamente emplazada el 17 de septiembre de 2000, y que su representación legal era la misma que la del Sr. García Marrero. Ésta, por lo tanto, es parte demandada aunque no aparezca en el epígrafe del recurso debido a que optó por no apelar al Tribunal de Circuito y no recurrir ante nosotros.

[3] En la alternativa y sobre este particular solicitó que de decretarse como válido dicho matrimonio se computase el ingreso de la codemandada y la sociedad de bienes gananciales compuesta por los

codemandados contestaron negando la validez del matrimonio entre García Marrero y Meléndez Soberal y aseverando que el único matrimonio válido era el habido entre los codemandados.[4]

Ambas partes solicitaron que como cuestión de derecho se dictara sentencia sumaria a su favor. Ambas partes también aceptaron que el 19 de mayo de 1985 se había celebrado una ceremonia matrimonial. Luego procedieron a argumentar, cada cual a su favor, sobre **la controversia central de derecho** de si, mediante esta ceremonia, se constituyó o no un matrimonio válido.

Con las diferentes mociones de sentencia sumaria y las oposiciones a las mismas radicadas por ambas partes, se presentaron todos los documentos necesarios para avalar los hechos pertinentes para poder resolver las cuestiones de derecho sometidas por las partes a la consideración del tribunal.[5]

---

codemandados para fines de la pensión alimentaria solicitada por la demandante.

[4] Además solicitaron se "afirmase" la sentencia sobre liquidación de comunidad de bienes.

[5] Con su moción de sentencia sumaria la Sra. Meléndez Soberal acompañó los siguientes documentos: (1) una copia de un Certificado de Matrimonio, que contenía la fecha de la ceremonia, el 19 de mayo de 1985, los nombres de los testigos, sus direcciones y firmas, los nombres y las firmas de los contrayentes y el nombre y la firma de la persona que ofició la ceremonia (no consta cómo se obtuvo copia del certificado); (2) la Certificación Médica requerida para la obtención de una licencia matrimonial debidamente cumplimentada; (3) el Certificado de Nacimiento de la demandante y el del hijo nacido el 6 de octubre de 1985. En la réplica a esta moción, la parte demandada incluyó también copia de los documentos antes mencionados, más: (1) la certificación de la Iglesia Unión Cristiana Misionera que dice que el Reverendo Antonio García nunca llevó los documentos al Registro Demográfico y que en sus registros no aparecía copia de algún documento que "legalizara" el matrimonio; (2) la Sentencia de 25 de febrero de 1998 sobre la liquidación de la supuesta comunidad de bienes habida entre el Sr. García Marrero y la Sra. Meléndez Soberal; y (3) el Certificado de Matrimonio entre el Sr. Edwin García Marrero y la Sra. Marilyn Guzmán Morales debidamente expedido por el Registro Demográfico.

El foro de instancia dictó sentencia sumaria parcial a favor de la demandante peticionaria Meléndez Soberal, mediante la cual determinó que entre ésta y el Sr. García Marrero había un matrimonio válido. Basó su conclusión de derecho en que de los documentos presentados surgían hechos no controvertidos de los cuales se podía determinar que la Sra. Meléndez Soberal y el Sr. García Marrero habían participado en la ceremonia nupcial estando ésta embarazada y contando con diecinueve (19) años de edad.[6] Concluyó que, como cuestión de derecho, según el Art. 74 del Código Civil, 31 L.P.R.A. § 242, "los menores de ambos sexos que hayan cumplido dieciocho (18) años de edad no necesitan autorización paterna... para contraer matrimonio en aquellos casos en que se pruebe que la mujer contrayente haya sido violada, seducida, **o está en estado de embarazo**". Además, los matrimonios anulables se convalidan un día después de que ambos cónyuges hayan llegado a la pubertad legal o cuando hayan concebido. Surgiendo de los hechos no controvertidos que se dieron las circunstancias que exige la ley para convalidar un matrimonio anulable por minoridad, el foro de instancia concluyó que como cuestión de derecho había habido un matrimonio válido entre el Sr. García Marrero y la Sra. Meléndez Soberal y, por lo tanto, ordenó al Registro Demográfico hacer la correspondiente inscripción del mismo. Expresó que los otros procedimientos en cuanto al divorcio continuarían. Nada dispuso sobre el matrimonio previamente inscrito en el Registro Demográfico entre García Marrero y Guzmán Morales.[7]

Ante este dictamen, el Sr. García Marrero recurrió al Tribunal de Circuito de Apelaciones (Tribunal de Circuito) el cual, aplicando

---

[6] Esto surge del certificado de nacimiento del menor habido de la relación entre ambas partes. El Sr. García Marrero aceptó este hecho.

las doctrinas de abuso de derecho, incuria e impedimento colateral por sentencia, revocó la determinación de instancia. Consideró como dispositivo del asunto ante su consideración la sentencia por estipulación que se había dictado el 25 de febrero de 1998 sobre la división de bienes de la comunidad y procedió a desestimar la demanda en su totalidad.[8]

Inconforme, la peticionaria Meléndez Soberal acudió ante nos alegando la comisión de los siguientes errores:

(1) **Erró al resolver que la sentencia sobre la liquidación de bienes de la comunidad era final y firme.**

(2) **Erró al resolver que la sentencia antes mencionada adjudicó también lo expresado en la reconvención sobre la existencia del matrimonio.**

(3) **Erró al desestimar la demanda por incuria.**

(4) **Erró al estimar que era de aplicación la doctrina de impedimento colateral por la sentencia emitida en cuanto a la liquidación de los bienes habidos en la comunidad.**

**Emitimos una orden para que el Sr. García Marrero mostrara causa por la cual no debíamos expedir el recurso y dictar sentencia revocando la dictada por el Tribunal de Circuito. Las partes han comparecido y, estando en posición para decidir, así procedemos a hacerlo sin ulteriores procedimientos.**

**II**

**Estamos ante un caso de divorcio por lo que procede, en primera instancia, determinar si existe un vínculo matrimonial válido entre**

---

[7] En la sentencia se hizo constar que se hacía formar parte de la misma "el Certificado Matrimonial suscrito por las partes ante el pastor Antonio García."

[8] Del escrito de apelación presentado ante el Tribunal de Circuito surge que sólo apeló de la sentencia dictada en instancia el codemandado García Marrero.

el Sr. García Marrero y la Sra. Meléndez Soberal que se pueda disolver por medio de una sentencia de divorcio.[9]  Tenemos pues, que analizar la validez de este vínculo matrimonial, ya que, de determinarse que no existe un vínculo matrimonial válido, procedería confirmar la determinación del Tribunal de Circuito, aunque por diferentes fundamentos.

El Art. 68 del Código Civil dispone que el matrimonio es una institución civil que procede de un contrato civil y que será válido solamente cuando se celebre y solemnice con arreglo a las prescripciones de ley, y sólo podrá disolverse antes de la muerte de cualquiera de los dos cónyuges, en los casos expresamente previstos en este título.  31 L.P.R.A. § 221.  De otra parte, el Art. 69 de nuestro Código Civil sólo exige tres (3) requisitos para contraer matrimonio:  (1) capacidad legal de los contratantes; (2) consentimiento de los contratantes; y (3) autorización y celebración de un contrato matrimonial mediante las formas y solemnidades prescritas por ley.  31 L.P.R.A. § 231.

Entre las incapacidades para contraer matrimonio está la del menor de edad que no haya obtenido el correspondiente permiso.  Art. 70(4) del Código Civil, 31 L.P.R.A. § 232.  Los menores de veintiún (21) años necesitan el permiso de las personas que los tengan bajo su patria potestad, disponiéndose que los menores de ambos sexos que hayan cumplido dieciocho (18) años de edad no necesitan autorización para contraer matrimonio en aquellos casos en que se pruebe que la

---

[9]  El Art. 95 del Código Civil, *supra*, enumera las tres (3) situaciones que disuelven el vínculo matrimonial: (1) muerte; (2) divorcio legalmente obtenido; y (3) nulidad.

mujer contrayente haya sido violada o esté en estado de embarazo. Art. 74 del Código Civil, 31 L.P.R.A. § 242.[10]

La minoridad es una incapacidad relativa. La solicitud para anular un matrimonio basándose en una incapacidad relativa, sólo la puede hacer la parte que por carecer de la capacidad necesaria produjo la anulabilidad. La petición la hará a través de su representación legal, F.A.T.R. v. Directora Escuela Ind., 83 D.P.R. 838 (1961) y la tiene que presentar antes de que se convalide dicha unión. Una vez desaparece la incapacidad, la parte que la tenía cesa de tener causa de acción para solicitar la nulidad del matrimonio. Estos matrimonios con carácter anulable están sujetos a la convalidación por medio de actos posteriores de los involucrados, por el pasar del tiempo o por la ausencia de una reclamación contra la validez del vínculo. *Id.*

En el caso de autos, ambos contrayentes tenían diecinueve (19) años de edad al momento en que se celebró la ceremonia matrimonial. Uno de ellos, el Sr. García Marrero, compareció con su madre, la cual complementó el consentimiento dado por el menor para contraer matrimonio; por otro lado, la Sra. Meléndez Soberal compareció con su hermana, la cual se hizo pasar por su tutora legal para complementar el consentimiento dado por la menor contrayente. Al comparecer una persona no autorizada para complementar el consentimiento de la menor, éste quedó viciado. No obstante, y aunque no lo expresara así al momento de la ceremonia, la menor contrayente Meléndez Soberal, como cuestión de hecho, estaba embarazada en ese momento. Éste, su primer hijo, fruto de sus

---

[10] Al haber sido el dictamen uno por sentencia sumaria, no se pasó prueba, a los efectos de este Artículo, de que la contrayente estaba en estado de embarazo para entonces prescindir de la autorización

relaciones con el Sr. García nació apenas cinco (5) meses después de la ceremonia.

Además, el vicio del consentimiento de la menor que pudiera haber existido, quedó subsanado, ya cuando cumplió la mayoría de edad o cuando concibió su segundo hijo, dentro de la unión matrimonial. Esta relación duró varios años, dentro de este término ambos, García Marrero y Meléndez Soberal, advinieron a la mayoría de edad y concibieron a su segundo hijo. Incuestionablemente, cualquier vicio de consentimiento por razón de la minoridad de edad de uno de los contrayentes quedó subsanado, según lo autoriza nuestro Código Civil. Tampoco cabe duda que la persona que podía solicitar la nulidad del matrimonio por ser la que supuestamente había tenido el consentimiento viciado era la demandante, Meléndez Soberal. De estos hechos surge con meridiana claridad que no procedía la acción de nulidad y que como cuestión de hecho y de derecho el matrimonio celebrado entre el Sr. García Marrero y la Sra. Meléndez Soberal el 19 de mayo de 1985 quedó convalidado y es uno válido.

Aclarado lo anterior, corresponde analizar el efecto, si alguno, que la no inscripción del matrimonio en el Registro Demográfico tiene sobre la validez del mismo.

III

Las inscripciones del Registro Demográfico no constituyen de por sí una declaración incontrovertible de un hecho. Tosado v. Tenorio, 140 D.P.R. 859, 865 (1996).[11] Aunque el certificado de matrimonio

---

paterna. Sin embargo, esto resulta irrelevante ya que el matrimonio fue convalidado, como veremos, por eventos posteriores.

[11] En este caso estaba en controversia la filiación. Ante una alegación de que no era padre de la criatura porque no se inscribió

expedido por el Registro Demográfico tiene un gran valor probatorio siendo prueba "prima facie" de la existencia de un matrimonio,[12] una certificación negativa de casamiento expedida por el Registro Demográfico no prueba, por sí sola, la inexistencia del mismo.  Ante un matrimonio convalidado, la certificación negativa lo que demuestra es que éste nunca se inscribió, no que éste no se celebró y no existe.

Reiteramos lo que expresáramos en <u>Pueblo v. Jordán Terraza</u>, *supra*, pág. 596:

> La Ley Núm. 24 del Registro Demográfico autoriza la admisibilidad del certificado por mandato expreso del Legislador.  Ello se justifica en atención a los diversos trámites que estatutariamente y reglamentariamente tienen que cumplir los interesados y el celebrante –antes, durante y después– de la celebración de un matrimonio....  (Énfasis suplido.)

En el caso de autos, los contrayentes cumplieron con los exámenes de sangre y médicos; suministraron información personal y de sus progenitores solicitada en el formulario del "Certificado"; los contrayentes, el celebrante y los testigos, al firmar el documento de "Certificado de Matrimonio", atestiguaron la celebración de la ceremonia matrimonial.  Del expediente se puede colegir con meridiana claridad que los contrayentes, el celebrante y los testigos cumplieron cabalmente con todos los requisitos exigidos por ley para la celebración de un matrimonio válido.  Lo único que faltó fue que el celebrante, el Rvdo. Antonio García una vez concluida la ceremonia nupcial cumpliese con su deber ministerial de enviar al Registro

---

en el Registro Demográfico con su apellido, le dijimos que la misma no derrotaba la presunción de paternidad del Art. 113 del Código Civil, 31 L.P.R.A. § 461.

[12]    Art. 38 de la Ley del Registro Demográfico, 24 L.P.R.A. § 1237. <u>Pueblo v. Jordán Terraza</u>, 118 D.P.R. 592, 596 (1987); <u>Pueblo v. Ramírez</u>, 65 D.P.R. 680 (1946).

Demográfico los documentos que habían sido debidamente cumplimentados según los requisitos legales pertinentes.

El Art. 24 de la Ley del Registro Demográfico dispone que "toda persona autorizada por la ley, ante la que se hubiere celebrado el matrimonio, estará obligada a entregar dentro de los diez [10] días siguientes a la celebración del mismo, al encargado del registro del distrito en que tuvo lugar dicha ceremonia, la licencia matrimonial y la declaración jurada que hubiesen presentado los contrayentes de acuerdo con las disposiciones de la ley, junto con la certificación de la celebración del matrimonio, que expresará la fecha y lugar en que se hubiera celebrado el mismo y contendrá las firmas del celebrante y contrayentes y de los testigos presenciales del acto". Art. 24 de la Ley Núm. 24 de 22 de abril de 1931, 24 L.P.R.A. § 1163. El que no se cumpliera con el deber ministerial de llevar los documentos al Registro Demográfico para la inscripción de dicho matrimonio no tiene el efecto de invalidar el matrimonio que fue previamente celebrado.[13]

En el caso ante nuestra consideración y en relación con el Sr. García Marrero, se inscribió en el Registro Demográfico un matrimonio posterior al constituido entre éste y la Sra. Meléndez Soberal. El matrimonio posterior inscrito es entre los codemandados, García Marrero y Guzmán Morales. Ahora bien, al haber determinado que la unión habida entre el Sr. García Marrero y la Sra. Meléndez Soberal es una válida, y que procede su inscripción en el Registro Demográfico, nos encontramos ante una inscripción contradictoria por

---

[13]   Como se mencionó anteriormente, los contrayentes cumplieron con el requisito de obtener la certificación médica para la obtención de la licencia matrimonial, y tenían el certificado de matrimonio debidamente expedido por el Departamento de Salud del Estado Libre Asociado. Copia de este certificado debidamente cumplimentado se

haber otra sobre el mismo particular que ya consta registrada. Veamos cómo procede atender esta inscripción contradictoria.

IV

El Art. 70(1) del Código Civil, según enmendado el 14 de diciembre de 1997, 31 L.P.R.A. § 232, dispone que son incapaces para contraer matrimonio los casados legalmente. Casarse cuando aún persiste el vínculo matrimonial anterior es una incapacidad absoluta, que hace del matrimonio uno inexistente y no meramente anulable. Cruz v. Ramos, 70 D.P.R. 715 (1949). Vemos que, contrario a la incapacidad relativa que se establece en el inciso (4) del Art. 70, *supra*, discutido anteriormente, la incapacidad para contraer matrimonio cuando uno de los contrayentes ya está legalmente casado es absoluta. Por lo tanto, el matrimonio contraído por el Sr. García Marrero y la Sra. Guzmán Morales es nulo ya que el Sr. García Marrero estaba legalmente casado con la Sra. Meléndez Soberal al momento de celebrar sus nupcias con la Sra. Guzmán Morales. Al haber declarado legalmente válido el matrimonio habido entre la peticionaria Meléndez Soberal y el Sr. García Marrero y, por lo tanto, nulo el celebrado entre éste y la Sra. Guzmán Morales, procede hacer la rectificación correspondiente en el Registro Demográfico.

El Art. 31 de la Ley del Registro Demográfico, 24 L.P.R.A. § 1231, dispone que no podrá hacerse rectificación, adición o enmienda alguna que altere sustancialmente un certificado ya registrado a menos que exista orden del Tribunal al respecto. Por su parte, el Reglamento del Registro Demográfico, núm. 0316 de 19 de septiembre de 1957 §

---

acompañó con las mociones de sentencia sumaria, tanto de la demandante Meléndez Soberal como la del demandado García Marrero.

1071-19 dispone que "después que un certificado haya sido aceptado por el registrador, no podrá ser objeto de ningún cambio, borradura o alteración... sin el debido procedimiento de ley".  Esto significa que hay que traer el asunto al tribunal mediante la acción correspondiente, en la cual se incluyan todas las partes que podrían quedar afectadas. Será el tribunal el que determine si procede la rectificación y el que ordene la misma.  En el caso de autos se está solicitando la inscripción en el Registro Demográfico del matrimonio entre García Marrero y Meléndez Soberal y la rectificación de la inscripción del matrimonio entre García Marrero y Gúzmán Morales. No cabe la menor duda que el debido proceso de ley exigía que todos los afectados, Meléndez Soberal, García Marrero y Guzman Morales, fuesen incluidos como partes en el caso. Para resolver la acción de divorcio radicada por la peticionaria Meléndez Soberal, el tribunal tenía primero que determinar la validez de su matrimonio con el Sr. García Marrero.  Esto a su vez, constituía una impugnación al matrimonio habido entre el Sr. García Marrero y la Sra. Guzmán Morales.[14]

En este caso, como ya señaláramos, la Sra. Guzmán Morales fue debidamente emplazada e incluida como parte en el pleito el 17 de septiembre de 2000.  Ésta compareció al foro de instancia, contestó la demanda enmendada planteando varias defensas y solicitando específicamente que se declarase nulo ab intio el matrimonio entre García Marrero y Meléndez Soberal.  Sin embargo, optó por no

---

[14]    Cuando no pueden coexistir dos declaraciones contradictorias, la validez de una implica necesariamente la impugnación de la otra.  En una acción mixta de filiación, expresamos que la declaración de determinada filiación y la impugnación de otra son interdependientes. Federico Sánchez Encarnación v. Norma Sánchez Brunet, res. 13 de julio de 2001, 2001 J.T.S. 112, pág. 1570.

comparecer a los foros apelativos, el Tribunal de Circuito y el Tribunal Supremo.

V

Finalmente, en cuanto a la sentencia sobre la liquidación de bienes de la comunidad, aunque la misma advino final y firme, no se puede utilizar para aplicar al caso de autos la doctrina de cosa juzgada, o su corolario de impedimento colateral por sentencia. No hubo identidad de causa (estamos ante un pleito de divorcio y aquello fue una supuesta división de comunidad de bienes), ni los litigantes lo fueron en la misma calidad. Además, resulta totalmente inaceptable el que, sub-silencio, en una acción de liquidación de una supuesta comunidad de bienes resuelta mediante una sentencia que recoge una estipulación de las partes que versa exclusivamente sobre la división, se pretenda inferir que el tribunal pasó juicio sobre la validez de un matrimonio. La doctrina de cosa juzgada no debe aplicarse inflexiblemente, especialmente cuando al hacerlo se desvirtúan los fines de la justicia, produce resultados absurdos o cuando se plantean consideraciones de interés público. Pagán Hernández v. U.P.R., 107 D.P.R. 720, 736 (1978); Millán v. Caribe Motors Corp., 83 D.P.R. 494, 509 (1961); Feliciano Ruiz v. Alfonso Develop. Corp., 96 D.P.R. 108, 114 (1968); P.R.T.C. v. Unión Indep. Emp. Telefónicos, 131 D.P.R. 171, 194 (1992). En el caso de autos no procedía la aplicación ni de la doctrina de cosa juzgada, ni de la doctrina de impedimento colateral por sentencia, erró el Tribunal de Circuito al así resolver.

# VI

Por los fundamentos que anteceden, se expide el recurso solicitado y se dicta sentencia revocando la emitida el 15 de noviembre de 2001 por el Tribunal de Circuito que a su vez había revocado la dictada por el tribunal de instancia el 30 de octubre de 2000. Se devuelve el caso al foro de instancia y se ordena la inscripción en el Registro Demográfico del matrimonio válido habido entre el Sr. García Marrero y la Sra. Meléndez Soberal, y la rectificación de la inscripción contraria a ésta, el matrimonio entre el Sr. García Marrero y la Sra. Guzmán Morales. El foro de instancia velará porque todo esto se haga conforme a la Ley del Registro Demográfico, según enmendada, 24 L.P.R.A. § 1168(b), en cuanto al deber del Secretario de toda sala del tribunal de instancia de enviar al Secretario de Salud copia de la orden que ese tribunal emita conforme a lo aquí expresado. Los procedimientos deberán continuar en dicho foro de forma compatible con lo aquí resuelto.


Miriam Naveira de Rodón
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Norma Meléndez Soberal

    Peticionaria

       v.

                              CC-2001-1019

Edwin García Marrero

    Recurrido

SENTENCIA

San Juan, Puerto Rico a 12 de septiembre de 2002

Por los fundamentos expuestos en la Opinión que antecede, se expide el recurso solicitado y se dicta sentencia revocando la emitida el 15 de noviembre de 2001 por el Tribunal de Circuito que a su vez había revocado la dictada por el tribunal de instancia el 30 de octubre de 2000. Se devuelve el caso al foro de instancia y se ordena la inscripción en el Registro Demográfico del matrimonio válido habido entre el Sr. García Marrero y la Sra. Meléndez Soberal, y la rectificación de la inscripción contraria a ésta, el matrimonio entre el Sr. García Marrero y la Sra. Guzmán Morales. El foro de instancia velará porque todo esto se haga conforme a la Ley del Registro Demográfico, según enmendada, 24 L.P.R.A. § 1168(b), en cuanto al deber del Secretario de toda sala del tribunal de instancia de enviar al Secretario de Salud copia de la orden que ese tribunal emita conforme a lo aquí expresado. Los procedimientos deberán continuar en dicho foro de forma compatible con lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López concurre sin opinión escrita.

                        Patricia Otón Olivieri
                 Secretaria del Tribunal Supremo