EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Puerto Rico Wire Products, Inc.; Ace Forming Systems, Inc.; Ace Construction Supplies, Inc.<br><br>        Apelantes<br><br>            v.<br><br>C. Crespo & Asociados, Inc.; Carmi Construction Corp.; Miguel E. Crespo; Jorge D. Crespo; Miguel A. Crespo, Seguros Triple S, Inc., et als<br><br>        Apelados | Apelación<br><br>2008 TSPR<br><br>175 DPR \_\_\_\_ |

Número del Caso: AC-2006-94

Fecha: 15 de diciembre de 2008

Tribunal de Apelaciones:

            Región Judicial de San Juan, Panel IV

Juez Ponente:

            Hon. Guillermo Arbona Lago

Abogado de la Parte Apelante:

            Lcdo Luis López Gómez

Abogado de la Parte Apelada:

            Lcdo. Sigfredo A. Irizarry Semidei

Materia: Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Puerto Rico Wire Products, Inc;
Ace Forming Systems, Inc.; Ace
Construction Supplies, Inc.

        Apelantes

          v.                      AC-2006-94

C. Crespo & Asociados, Inc,
Carmi Construction Corp.;
Miguel E. Crespo; Jorge D.
Crespo; Miguel A. Crespo,
Seguros Triple S, Inc.; et als

        Apelados

Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez.

San Juan, Puerto Rico a 15 de diciembre de 2008.

En esta ocasión, debemos resolver si la desestimación con perjuicio de la demanda por insuficiencia en el diligenciamiento del emplazamiento, en contra del contratista principal y a favor del dueño de la obra, en un litigio por cobro de dinero, constituye impedimento colateral por sentencia en una reclamación instada por los materialistas en contra del dueño de la obra. Concluimos que no.

## I

En 1999, la Iglesia Católica, Apostólica y Romana, Arquidiócesis de San Juan, en adelante Iglesia, suscribió un contrato de ejecución de obra

con la Constructora Marvic, Inc., en adelante Marvic, para la construcción del proyecto "Parroquia San Juan de la Cruz", en la Urbanización los Paseos en Río Piedras. Como parte del desarrollo del proyecto, Marvic contrató los servicios de C. Crespo y Asociados, y de Carmi Construction Corp. Éstos, a su vez, pactaron con Puerto Rico Wire Products, Inc., ACE Forming Systems, Inc., y ACE Construction, en adelante materialistas o peticionarios, la adquisición de materiales y el arrendamiento de equipo de construcción para la referida obra.

Tras comenzar la construcción de la obra, Carmi le cursó a la Iglesia una carta en donde le reclamó el pago de $70,029.04, en vista de que Marvic no había satisfecho dicha suma por los trabajos realizados. En el ínterin, Marvic le envió a la Iglesia una factura solicitándole el pago de $97,192.35 por concepto de labor realizada en la obra. Ante tal situación y en vista de la aparente deuda que la Iglesia mantenía con Marvic, aquélla depositó $97,192.35 en el Tribunal de Primera Instancia.

Así las cosas, la Iglesia advino en conocimiento que Marvic había utilizado el dinero pagado para fines no autorizados. En vista de ello, el 28 de noviembre de 2000, la Iglesia resolvió el contrato de construcción por incumplimiento y tomó posesión de la obra. Conforme lo anterior, la Iglesia presentó ante el foro primario una moción para retirar los fondos consignados y arguyó que Marvic le debía dinero. El foro primario declaró ha lugar la referida moción.

Posteriormente, Carmi no les pagó a los materialistas los cánones pactados para el arrendamiento de la maquinaria de construcción. Por ello, el 8 de agosto de 2001, los peticionarios le reclamaron extrajudicialmente a la Iglesia –como dueña de la obra– el importe no satisfecho por dicho subcontratista.

Luego de reclamarle infructuosamente a la Iglesia el importe debido, los materialistas entablaron demanda de cobro de dinero contra Crespo, Carmi y su compañía aseguradora Seguros Triple S, y la Iglesia, entre otros. En la referida demanda, los materialistas le reclamaron a los demandados $96,704.25 adeudados por concepto de los materiales adquiridos a crédito y de los equipos de construcción rentados por los subcontratistas para el desarrollo de la referida obra. En particular, los materialistas adujeron que la Iglesia era la dueña de la obra y les respondía en virtud del Artículo 1489 del Código Civil.[1]

Por su parte, en su contestación a la demanda, la Iglesia expuso que no les adeudaba ningún dinero a los materialistas debido a que no había suscrito con ellos contrato alguno. En la alternativa, la Iglesia indicó que de ser responsable, su responsabilidad estaba limitada al monto, si alguno, que adeudare a Marvic.

---

[1] 31 L.P.R.A. sec. 4130. El referido artículo dispone lo siguiente: "Los que ponen su trabajo y materiales en una obra ajustada alzadamente por el contratista no tienen acción contra el dueño de ella sino hasta la cantidad que éste adeude a aquél cuando se hace la reclamación."

Cabe señalar que el 11 de diciembre de 2002, el Tribunal de Primara Instancia emitió Sentencia Parcial contra Carmi y la condenó a satisfacer $96,704.25 a los materialistas, más una partida de $5,000 por concepto de honorarios de abogado. Sin embargo, surge del Informe de la Conferencia con Antelación al Juicio que tal dictamen no es final y firme debido a un error de forma que no fue corregido por el foro sentenciador.[2]   Precisa indicar, además, que el 17 de diciembre de 2005, los peticionarios suscribieron un contrato de transacción por $19,318.69 con Seguros Triple S, compañía afianzadora de Carmi.

Tras varios incidentes procesales, la Iglesia solicitó la desestimación sumaria de la reclamación incoada en su contra.   Fundamentó su solicitud arguyendo que su responsabilidad hacia los materialistas estaba limitada a la suma adeudada a Marvic, contratista general de la obra. No obstante, la Iglesia señaló que no le adeudaba suma alguna a Marvic, sino que era éste quien le adeudaba dinero, por lo que no era responsable frente a los materialistas.   En apoyo a su razonamiento, la Iglesia manifestó que no había otorgado contrato alguno con los materialistas y que éstos asumieron el riesgo de proveer materiales a corporaciones dedicadas a la construcción.[3]

---

[2] Apéndice del recurso de *certiorari* ante el Tribunal de Apelaciones, págs. 6-16.

[3] Apéndice del recurso de *certiorari,* págs. 26-32. Entre los documentos que acompañó la Iglesia para sustentar la moción de sentencia sumaria, se encuentran dos (2) declaraciones juradas suscritas por el Lcdo. Luis F. Hernández y el Sr. Omar Santamarina Dorta, quienes dieron fe que la Iglesia no

En atención a lo anterior, los materialistas presentaron oposición a la solicitud de sentencia sumaria presentada por la Iglesia. En esencia, alegaron que no procedía dictar sentencia sumaria a favor de la Iglesia toda vez que existía una controversia de hechos ya que desde el momento en que le reclamaron extrajudicialmente a la Iglesia, ésta le respondía por la cantidad adeudada en virtud del Artículo 1489 del Código Civil, *supra*. Indicaron, además, que cuando la Iglesia resolvió el contrato de construcción suscrito con Marvic, permanecieron en el proyecto, materiales y equipo de construcción, que no fueron devueltos con premura a pesar de los múltiples requerimientos realizados.[4]

Mientras todo esto sucedía, Marvic presentó una acción de cobro de dinero por obra realizada y no pagada contra la Iglesia. <u>No obstante, la demanda fue archivada con perjuicio por insuficiencia en el diligenciamiento del emplazamiento.</u> Tal determinación advino final y firme después que el Tribunal de Apelaciones desestimó el recurso de apelación presentado por falta de jurisdicción.

Así las cosas, el Tribunal de Primera Instancia denegó la solicitud de sentencia sumaria presentada por la Iglesia. Inconforme con dicho dictamen, la Iglesia recurrió ante el Tribunal de Apelaciones y sostuvo que procedía dictar sentencia sumaria a su favor. Dicho foro revocó y

---

le adeuda dinero a Marvic. Ambos se desempeñan como participantes activos en la construcción de la parroquia.

[4] *Íd*, págs. 33-35.

determinó que en el pleito desestimado con perjuicio contra Marvic, se adjudicó que éste no tenía acreencia alguna que reclamar a la Iglesia, por lo que era forzoso concluir que la Iglesia nada debía a los materialistas al amparo del Artículo 1489 del Código Civil, *supra.*

Dicho de otro modo, el foro apelativo intermedio resolvió que la desestimación con perjuicio en el caso instado por Marvic contra la Iglesia, constituye impedimento colateral por sentencia en la causa de acción entablada por los materialistas contra la Iglesia.  En vista de lo anterior, el Tribunal de Apelaciones dictó sentencia sumaria a favor de la Iglesia desestimando con perjuicio la reclamación instada por los materialistas.

Insatisfechos con tal dictamen, los materialistas acuden ante nos mediante recurso de *certiorari y* sostienen que el foro apelativo intermedio cometió los errores siguientes:

> Cometió grave error de derecho el Tribunal de Apelaciones al dictar sentencia, mediante la cual desestimó y archivó con perjuicio la causa de acción incoada por las partes demandantes contra la ("Iglesia").

> Cometió grave error de derecho el Tribunal de Apelaciones al dictar sentencia sumaria parcial, obviando el texto claro del Artículo 1489 del Código Civil de Puerto Rico, 31 L.P.R.A. 4130.

> Cometió grave error de derecho el Tribunal de Apelaciones al dictar sentencia sumaria parcial, existiendo evidente controversia de hechos en cuanto a los hechos materiales y pertinentes del litigio.

> Cometió grave error de derecho el Tribunal de Apelaciones al concluir que dos (2) sentencias

> previas, dictadas en acciones totalmente ajenas
> a las partes demandantes-apelantes, y en las
> cuales estas no fueron parte, constituyen un
> [sic] impedimento colateral insalvable a la
> causa de acción instada en el presente caso.

Antes que expidiéramos el recurso, el tribunal *a quo* celebró una Vista de Conferencia con Antelación al Juicio. Como resultado de lo anterior y en vista de que el litigio no estaba paralizado, el foro primario dictó sentencia parcial en la que le ordenó a los codemandados Miguel A. Crespo Arroyo, C. Crespo y Carmi Construction pagar $77,385.56 a los materialistas.[5] Respecto a la causa de acción incoada contra la Iglesia, el representante legal de los peticionarios solicitó que se mantuviera en suspenso hasta tanto este Tribunal resolviera el presente certiorari.

El caso está sometido en los méritos. Con el beneficio de la comparecencia de ambas partes, pasamos a resolver la controversia ante nuestra consideración.

## II

El Artículo 1489 del Código Civil, *supra*, dispone lo siguiente:

> Los que ponen su trabajo y materiales en una
> obra ajustada alzadamente por el
> contratista, no tienen acción contra el
> dueño de ella sino hasta la cantidad que
> éste adeude a aquél cuando se hace la
> reclamación.

_____

[5]Conviene señalar, que luego de analizar detenidamente el expediente del caso de autos, no surge que dicha sentencia haya sido satisfecha por Carmi.

El citado artículo, de origen francés[6], les concede a los obreros y materialistas una <u>acción directa contra el comitente o dueño de la obra</u>, en el supuesto de impago por parte del contratista hacia ellos. Ahora bien, dicha acción está limitada a la cantidad que el comitente adeude al contratista al momento de la reclamación extrajudicial o judicial instada por los materialistas o por los obreros.[7]

En varias ocasiones, hemos resuelto que la acción que le concede el Artículo 1489 del Código Civil, *supra*, a los materialistas y a los obreros está cimentada en consideraciones de orden público y de índole moral, para así propiciar el pronto pago a éstos y evitar el enriquecimiento injusto del dueño y el empresario a través del fraude o de la confabulación.[8] En aras de lograr el objetivo del legislador, hemos decretado en innumerables ocasiones que el comitente o dueño de la obra se convierte en deudor de los materialistas u obreros <u>desde el mismo</u>

---

[6] El Código Civil Francés dispone lo siguiente: "los albañiles, carpinteros, y otros obreros que se hayan empleado en la construcción de un edificio o de otras obras hechas por precio alzado, no tienen una acción contra aquel para el cual se han hecho las obras más que hasta la cantidad por al que éste resulte deudor para con el contratista, en el momento que aquéllos interpongan su acción". Para una discusión más detallada sobre el origen y la evolución del referido artículo, véase: Ricardo de Ángel Yagüez, *Los créditos derivados del contrato de obra: su protección legal en la legislación civil*, Ed. Tecnos, Madrid, 1969; Scaevola, *Código Civil*, Tomo XXIV, Vol. II, Madrid, 1951, págs 157-173.

[7] Véase <u>Goss, Inc. v. Dycrex Const. & Co., S.E.</u>, 141 D.P.R. 342 (1996).

[8] Véase <u>C. Armstrong e Hijos v. Díaz</u>, 95 D.P.R. 819, 824-825; <u>Amer. Surety Co. V. Tribunal Supremo</u>, 97 D.P.R. 452, 455.

instante en que éstos le reclaman la cantidad adeudada por el contratista de la obra, ya sea mediante reclamación extrajudicial o judicial.[9]

Es menester indicar que la acción reconocida a los materialistas y obreros es una excepción al principio general del derecho de obligaciones plasmado en el Artículo 1209 del Código Civil que dispone, *inter alia*, que los contratos sólo producen efecto entre lo otorgantes y sus causahabientes.[10] A través del referido texto legal, el legislador rompió con los tradicionales moldes obligacionales. Consideró que los créditos que ostentaban los materialistas y obreros ameritaban una protección especial y categórica, que no los dejara a merced del comitente y el contratista.

No obstante, es de rigor señalar que en Román & Cía, Inc. v. J. Negrón Crespo, *supra*, resolvimos –citando a Yagüez– que la acción concedida por el Artículo 1489 del Código Civil, *supra*, no supone una modificación de la relación contractual entre comitente y contratista, y entre éste y los actores, ni su ejercicio implica la creación de una nueva relación sustantiva comitente-materialistas u obreros. Por tal razón, en Armstrong, Etc. v. Inter-Amer. Builders Inc., *supra*, limitamos en dos extremos el derecho

_____

[9] Véase Amer. Surety Co. v. Tribunal Superior, *supra*; C. Armstrong e Hijos v. Díaz, supra; Román & Cía, Inc. v. J. Negrón Crespo, 109 D.P.R. 26 (1979); Goss v. Dycrex, *supra*. Énfasis suplido.

[10] 31 L.P.R.A. sec. 3374. Véase además Goss v. Dycrex, *supra*; Román & Cía, Inc. v. J. Negrón Crespo, *supra*.

que ostentan los materialistas y obreros contra el comitente, por concepto de trabajo o de materiales suplidos y usados en la obra.

En primer término y según expresamos anteriormente, la cuantía de la reclamación de los materialistas u obreros está circunscrita a la cantidad que el comitente le adeude al contratista bajo el contrato de construcción, al momento en que se hace la reclamación, ya sea extrajudicial o mediante la interposición de demanda.[11] En segundo término, el materialista u obrero no adquiere ante el comitente más derechos que los que tenía el contratista, de manera que el monto adeudado está sujeto a liquidación por razón de reajustes o posibles reclamaciones recíprocas que surjan entre el contratista y el comitente en relación con la obra contratada.[12] Es imperativo puntualizar que en Armstrong, Etc. v. Inter-Amer. Builders Inc., *supra*, pág. 741 enfatizamos que tales reajustes no incluyen la variación del precio del contrato de construcción por convenio privado entre el contratista y el comitente en perjuicio de los materialistas u obreros.[13]

Al analizar la aludida disposición legal, debemos tener presente que la acción derivada del Artículo 1489 del

---

[11] En Goss v. Dycrex, *supra*, resolvimos que el dueño de la obra se convierte en deudor de los materialistas u obreros desde el instante mismo en que éstos le reclaman su acreencia, ya sea mediante reclamación extrajudicial o judicial.

[12] *Íd.*

[13] *Íd.*

Código Civil, *supra*, es una acción directa a favor de los materialistas y obreros, y no se trata de una acción subrogatoria al amparo del Artículo 1064 del Código Civil.[14] En vista de lo anterior, los materialistas y obreros no tienen que realizar una excusión previa de los bienes del deudor principal como antesala a la acción directa contra el comitente.

Luego de delinear la normativa sobre el contrato de ejecución de obra, la solución adecuada de la controversia ante nos, requiere que analicemos la doctrina de cosa juzgada y su modalidad, el impedimento colateral por sentencia, con el fin de determinar si la desestimación con perjuicio en el pleito instado por Marvic contra la Iglesia, constituye impedimento colateral por sentencia en la acción entablada por los materialistas en contra de la Iglesia.

**III**

El Artículo 1204 de nuestro Código Civil[15] consagra la doctrina de cosa juzgada, de raigambre romana, en nuestro ordenamiento jurídico. El referido artículo dispone, en lo pertinente, lo siguiente:

_____

[14] 31 L.P.R.A. sec. 3028. El referido artículo dispone lo siguiente: "Los acreedores, después de haber perseguido los bienes de que esté en posesión el deudor para realizar cuanto se les debe, pueden ejercitar todos los derechos y acciones de éste con el mismo fin, exceptuando los que sean inherentes a su persona; pueden también impugnar los actos que el deudor haya realizado en fraude de su derecho."

[15] 31 L.P.R.A. sec. 3343.

> Contra la presunción de que la cosa juzgada es verdad, sólo será eficaz la sentencia ganada en juicio de revisión.
>
> Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. […]
>
> Se entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas.

El ilustre tratadista español Manresa define la doctrina de cosa juzgada como "lo ya resuelto por fallo firme de un Juez o Tribunal competente, y lleva en sí la firmeza de su irrevocabilidad."[16] El efecto inexorable de la doctrina de cosa juzgada es que la sentencia decretada en un pleito anterior impide que en un pleito posterior se litiguen entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas, y aquellas que pudieron haber sido litigadas y adjudicadas con propiedad en la acción previa.[17]

En reiteradas ocasiones, hemos determinado que la aplicación de la doctrina de cosa juzgada es provechosa y

---

[16] J.M. Manresa, *Comentarios al Código Civil Español*, Ed. Reus, T. VIII, Vol. II, 6ta Ed., Madrid, España, 1967, pág. 278.

[17] Méndez v. Fundación, 165 D.P.R.___, res. el 11 de julio de 2005, 2005 T.S.P.R. 105; Pagán Hernández v. U.P.R., 107 D.P.R. 720, 732-733; Mercado Riera v. Mercado Riera, 100 D.P.R. 940, 950 (1972).

necesaria para la sana administración de la justicia.  A través de la doctrina de cosa juzgada, se promueve el interés del Estado en ponerle punto final a los litigios, de manera que éstos no se eternicen y se le dé la debida dignidad a las actuaciones de los tribunales.[18]  De otra parte, mediante la referida doctrina se protege a los ciudadanos de las molestias y vicisitudes que supone litigar dos veces la misma causa de acción o aquellas que pudieron haberse litigado en dicha ocasión.[19]  De lo anterior podemos colegir que el propósito de la doctrina de cosa juzgada es "imprimirle finalidad a los dictámenes judiciales, de manera que las resoluciones contenidas en éstos concedan certidumbre y certeza a las partes en el litigio."[20]

En aras de que el litigante pueda invocar exitosamente la defensa de cosa juzgada es preciso que entre el caso resuelto por la sentencia y en el caso que se invoca la misma, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron.[21]  No obstante, en ciertas ocasiones hemos declinado aplicar la defensa de cosa juzgada aún cuando concurren los mencionados requisitos, para evitar una

---

[18] Pérez v. Bauzá, *supra*;

[19] Pérez v. Bauzá, *supra*; Parrilla v. Rodríguez, 163 D.P.R. 263 (2004).

[20] Parrilla v. Rodríguez, *supra*.

[21] Artículo 1204 del Código Civil, *supra*; Méndez v. Fundación, *supra*.

injusticia o cuando se plantean consideraciones de interés público.[22] Ahora bien, en Parrilla v., Rodríguez, *supra*, decretamos que no se favorece la aplicación liberal de excepciones a la doctrina de cosa juzgada puesto que se puede afectar la finalidad de las controversias adjudicadas, y por ende el buen funcionamiento del sistema judicial.

Por otra parte, hemos reconocido en nuestro acervo jurídico la figura del impedimento colateral por sentencia como una modalidad de la doctrina de cosa juzgada. El impedimento colateral por sentencia "surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final, [y] tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas."[23] Es decir, el impedimento colateral por sentencia impide que se litigue en un litigio posterior un hecho esencial que fue adjudicado mediante sentencia final en un litigio anterior. No obstante, a diferencia de la doctrina de cosa juzgada, la aplicación de la figura de impedimento colateral por sentencia no exige

---

[22] Véase Parrilla v. Rodríguez, *supra*; Pérez v. Bauzá, *supra*; Meléndez v. García, 158 D.P.R. 77 (2002); Mun. de San Juan v. Bosque Real S.E., 158 D.P.R. 743 (2003); Pagán Hernández v. U.P.R., 107 D.P.R. 720 (1998).

[23] A & P General Contractors, Inc. v. Asociación Caná, Inc., 110 D.P.R. 753, 762 (1981)

la identidad de causas, esto es, que la razón de pedir plasmada en la demanda sea la misma en ambos litigios.[24]

Al igual que la doctrina de cosa juzgada, el propósito de la figura del impedimento colateral por sentencia es promover la economía procesal y judicial, y amparar a los ciudadanos del acoso que necesariamente conlleva litigar en más de una ocasión hechos ya adjudicados.

En A & P General Contractors, Inc. v. Asociación Caná, Inc., *supra*, tuvimos la oportunidad de analizar y examinar, la figura del impedimento colateral por sentencia. En dicha ocasión, expresamos que el impedimento colateral por sentencia se manifiesta en dos (2) modalidades. La modalidad defensiva le permite al demandado levantar la defensa de impedimento colateral por sentencia, a los fines de impedir la litigación de un asunto levantado y perdido por el demandante en un pleito anterior frente a otra parte. De otro lado, la modalidad ofensiva es articulada por el demandante en un litigio posterior para impedir que el demandado relitigue los asuntos ya dilucidados y perdidos frente a otra parte. Como se puede apreciar, el denominador común entre ambas modalidades es que la **parte**

---

[24] Véase Rodríguez Rodríguez v. Colberg, 131 D.P.R. 212, 219 (1992). Sobre la identidad de causas, señalamos en A & P General Contractors, Inc. v. Asociación Caná, Inc., *supra,* a la pág. 765, que en el contexto particular de la doctrina de cosa juzgada y de impedimento colateral por sentencia, tal requisito significa el fundamento capital, es decir, el origen de las acciones o excepciones planteadas y resueltas.

**afectada por la interposición del impedimento colateral ha litigado y ha perdido el asunto en el pleito anterior.**[25]

Como corolario de lo anterior, es inevitable concluir que no procede la interposición de la doctrina de impedimento colateral por sentencia –ya sea en su vertiente ofensiva o defensiva– cuando la parte contra la cual se interpone (1) no ha tenido la oportunidad de litigar previamente el asunto y (2) no ha resultado ser la parte perdidosa en un litigio anterior.

**IV**

Con estos criterios en mente, pasemos a los méritos de la controversia ante nos. En vista de que los señalamientos de error articulados por los materialistas están íntimamente relacionados, los discutiremos en conjunto.

Los materialistas sostienen, en síntesis, que el Tribunal de Apelaciones erró al concluir que la desestimación con perjuicio en la acción incoada por Marvic contra la Iglesia constituye impedimento colateral por sentencia en el litigio instado por ellos contra la Iglesia, puesto que tal desestimación respondió al diligenciamiento tardío del emplazamiento y no fue una adjudicación en los méritos. Arguyen, además, que la desestimación con perjuicio en dicho pleito no les puede afectar su derecho a reclamar contra la Iglesia al amparo del Artículo 1489 del Código Civil, *supra*, toda vez que

---

[25] A & P General Contractors, Inc. v. Asociación Caná, Inc., *supra,* págs. 758-761. Énfasis suplido.

eran parte indispensable en la referida acción y no fueron incluidos a esos efectos.

Por su parte, la Iglesia arguye en su alegato que el foro apelativo intermedio aplicó correctamente la figura del impedimento colateral por sentencia y apoya su posición en la procedencia de la sentencia sumaria presentada. En vista de ello, sostiene que los materialistas no controvirtieron mediante documentos el hecho medular de la controversia ante nos, a saber, que la Iglesia no le adeuda cantidad alguna a ellos por los materiales suministrados en la obra. No les asiste la razón. Veamos.

Adviértase, de entrada, que el pleito entablado por Marvic contra la Iglesia fue desestimado con perjuicio debido a que el primero no diligenció el emplazamiento a la Iglesia dentro del término estatutario de seis (6) meses. Claramente, tal desestimación obedeció al mandato de la Regla 4.3(b) de las Reglas de Procedimiento Civil y no fue una adjudicación en los méritos.[26] Es decir, en ese litigio no se adjudicó ni se paso prueba sobre la reclamación de Marvic contra la Iglesia.

_____

[26] El inciso (b) de la referida regla dispone lo siguiente: "El emplazamiento será diligenciado en el término de 6 meses de haber sido expedido. Dicho término sólo podrá ser prorrogado por un término razonable a discreción del tribunal si el demandante demuestra justa causa para la concesión de la prórroga y solicita la misma dentro del término original. Transcurrido el término original o la prorroga sin que el emplazamiento hubiere sido diligenciado, se tendrá a la parte actora por desistida con perjuicio". (Énfasis suplido). 32 L.P.R.A. Ap. III, R. 4.3(b).

No obstante, el foro apelativo intermedio entendió, que en dicho caso quedó resuelto que la Iglesia nada adeudaba a Marvic. En vista de lo anterior y dado que la reclamación de los materialistas está circunscrita a la cantidad que la Iglesia le adeude a Marvic, concluyó que la determinación en el referido litigio, constituye impedimento colateral por sentencia en el caso ante nos.

A nuestro juicio, la interpretación del foro apelativo intermedio es errónea. Como regla general, la adjudicación de un hecho esencial en un pleito anterior constituye impedimento colateral por sentencia en un pleito posterior en que se trate de litigar tales hechos. No obstante y según expresamos en el acápite anterior, la doctrina de impedimento colateral por sentencia no surtirá efectos cuando la parte contra la cual se ofrece la sentencia previa: (1) no ha tenido la oportunidad de litigar previamente el asunto y (2) no ha resultado ser la parte perdidosa en un litigio anterior.

En el caso ante nos, no procede aplicar la doctrina de impedimento colateral por sentencia en su modalidad defensiva, contra los materialistas toda vez que no están presentes los requisitos antes mencionados. En primer lugar, los materialistas no fueron parte en el pleito entablado por Marvic contra la Iglesia, por lo que no tuvieron la oportunidad de litigar y presentar prueba sobre la procedencia de su acreencia contra la Iglesia. Por tanto, la sentencia que la Iglesia arguye que constituye

impedimento colateral, no fue una adjudicación en los méritos de la reclamación de los materialistas. Evidentemente, en el presente caso, no cabe hablar de impedimento colateral por sentencia.

En segundo lugar, tampoco está presente el segundo requisito para la aplicación de la doctrina de impedimento colateral. Claramente los materialistas no resultaron ser la parte perdidosa en la causa de acción entablada por Marvic contra la Iglesia. Éstos ni siquiera fueron parte en el referido procedimiento judicial, el cual -como ya dijimos- fue desestimado con perjuicio por el incumplimiento de Marvic con la Regla 4.3(b) de las Reglas de Procedimiento Civil, *supra*. Además, debido a la desestimación con perjuicio de dicho pleito, nunca se determinó si Marvic tenía alguna acreencia contra la Iglesia.

En vista de lo anterior, el caso de autos no supone una relitigación de hechos ya adjudicados y tampoco presenta el riesgo de dos (2) fallos contradictorios. Téngase presente que la acción que el Artículo 1489 del Código Civil, *supra*, les otorga a los materialistas es una medida de protección social y "no podemos frustrar la justicia en nombre de reglas que se originaron con el propósito de facilitar su administración".[27]

Finalmente, no podemos suscribir el argumento de la Iglesia a los efectos que procede dictar sentencia sumaria

---

[27] <u>Millán v. Caribe Motors</u>, 83 D.P.R. 494, 508 (1961).

a su favor.   La Iglesia incorporó a su solicitud de sentencia sumaria dos (2) declaraciones juradas suscritas por el Lcdo. Luis F. Hernández y el Sr. Omar Santamarina Dorta –participantes activos en la construcción de la parroquia– quienes dieron fe que ésta no le adeuda suma alguna a Marvic.

Al examinar el expediente del caso, nos percatamos que existen tres (3) copias de cartas cursadas por los materialistas a la Iglesia, en donde le reclaman el pago de los materiales provistos en la construcción.   Por tanto, concluimos que existe una controversia sobre hechos esenciales y materiales, por lo que no procede dictar sentencia sumaria a favor de la Iglesia.   Así lo entendió correctamente el foro primario.

## V

Por los fundamentos antes expuestos, se revoca en su totalidad la determinación del Tribunal de Apelaciones. Devolvemos el presente caso al Tribunal de Primera Instancia, para que éste celebre una vista en su fondo de naturaleza evidenciaria y determine si, al momento en que los materialistas realizaron la reclamación extrajudicial a la Iglesia, ésta adeudaba algún dinero a Marvic, y por ende a ellos.

Efraín E. Rivera Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Puerto Rico Wire Products, Inc;
Ace Forming Systems, Inc.; Ace
Construction Supplies, Inc.

     Apelantes

       v.

C. Crespo & Asociados, Inc,
Carmi Construction Corp.; Miguel
E. Crespo; Jorge D. Crespo;
Miguel A. Crespo, Seguros Triple
S, Inc; et als

     Apelados

AC-2006-94

SENTENCIA

San Juan, Puerto Rico, a 15 de diciembre de 2008.

Por los fundamentos antes expuestos, se revoca en su totalidad la determinación del Tribunal de Apelaciones. Devolvemos el presente caso al Tribunal de Primera Instancia, para que éste celebre una vista en su fondo de naturaleza evidenciara y determine si, al momento en que los materialistas realizaron la reclamación extrajudicial a la Iglesia, ésta adeudaba algún dinero a Marvic, y por ende a ellos.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo